Mary Frances Keefe CRANNEY, Plaintiff,

v.

TRUSTEES OF BOSTON UNIVERSITY, James M. Faulkner, Arthur M. Lassek, Bardwell H. Flower, Richard W. Nelson, and George H. Longstreet, Joint and Several Defendants.

Civ. A. No. 56–17.

United States District Court
D. Massachusetts.

Feb. 14, 1956.

all defendants to dismiss the plaintiffs' complaint on the ground that it does not state a cause of action within the jurisdiction of the United States District Court. I shall dispose of the case by extemporaneous opinion from the bench.

On January 4th, plaintiff, Mrs. Mary Frances Keefe Cranney, a citizen of Massachusetts, filed a complaint, which covers eight pages of long legal paper, most of which carries typing single-spaced. Before saying anything else, it is appropriate for the Court to remark that this complaint is plainly in violation of the rule of federal procedure which requires that pleadings shall be simple, direct, and concise. If there were no other reason to dismiss the complaint, this by itself would be a sufficient ground. But since other defects of a more fundamental nature are also apparent, this first ground is relied upon merely as supplementary.

The complaint joins as defendants the Trustees of Boston University, a Massachusetts corporation, the Dean of that University's School of Medicine (Dr. James M. Faulkner), a Professor in that Medical School (Dr. Arthur M. Lassek), Dr. Bardwell H. Flower, who, in addition to being a lecturer at that school also lived in Worcester, where he had other authority, Richard W. Nelson, a doctor in Worcester, and George H. Longstreet, a funeral director having an office in Worcester.

While it is difficult for any one who merely reads the complaint to know what it is that the plaintiff relies upon, it is abundantly clear from the answers repeatedly given by plaintiff's counsel to questions put by the Court that the plaintiff relies solely upon the alleged jurisdiction of this Court under 28 U.S.C. § 1343(3), and upon the substantive rights alleged to be conferred by 42 U.S. C.A. § 1983. The earlier of the two statutes just cited provides that:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * *

James A. Murphy, Beverly, Mass., for plaintiff.

Hale & Dorr, Carl H. Amon, Jr., Boston, Mass., Joseph H. Elcock, Jr., Asst. Atty. Gen., and Warren C. Lane, Jr., Worcester, Mass., for defendants.

WYZANSKI, District Judge. (opinion dictated from bench).

This case comes before me upon written and oral motions made on behalf of

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

The substantive or latter statute just cited provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Stated summarily, the plaintiff, Mrs. Cranney, claims that she, as the sister and one of the next of kin of the late Thomas J. Keefe, has been deprived by action that the defendants took under the purported authority of Massachusetts General Laws (Tercentenary Edition), Chapter 113, Section 1 (governing disposition of bodies of certain deceased persons) of what she regards as her Constitutional right seasonably to perform at the deathbed of Keefe appropriate religious services and sacraments, assuring the decedent of immortal salvation and his next of kin of peace of mind, and also has been deprived of her own right seasonably to worship God at the deathbed, coffin and tomb of the decedent Keefe. Put even more briefly, Mrs. Cranney's contention is that by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens, she is given a right to timely worship in prayer at the deathbed and at the burial place of her late brother.

It is plain from the complaint (as well as from explicit concession by plaintiff's counsel) that plaintiff, though she happens to be the administratrix of her brother, is not suing in that capacity. She sues strictly in her individual right, if any.

Digesting an unnecessarily prolix complaint, the Court regards its text as showing that the plaintiff believes she can prove these facts. In her view, she and her brother, John Paul, were the only next of kin of the decedent, Thomas Keefe. Thomas was first being treated at St. John's Hospital in Lowell. About May 13, 1953, that hospital transferred him to a mental institution known as Worcester State Hospital, Worcester, Massachusetts. A special and Acting Justice of the District Court of the Commonwealth of Massachusetts for the District of Lowell, Judge Valentine, without seeing Keefe, authorized under the purported authority of Massachusetts General Laws (Tercentenary Edition), Chapter 123, Sections 24, 53 and 77, the retention by the Worcester State Hospital of Thomas for a period of observation to expire on June 14, 1953. About May 26, 1953, Thomas died. According to Paragraph 18 of the Complaint "the defendants knew or were bound to know that the plaintiff, Mary Frances Keefe Cranney, was the person entitled to the body of her brother, Thomas G. Keefe, for the purpose of Catholic burial and timely, appropriate religious services and sacraments that aid in securing God's consolation and peace of mind for the living as well as immortal salvation and everlasting peace and happiness for the soul of the dead. * * *" In short, the complaint alleges that the defendants either knew or should have known of Mrs. Cranney and of her religious concern both for her brother's soul and her own peace of mind.

According to the complaint, the defendants connected with Boston University made application under the provisions of Massachusetts General Laws, Chapter 113, Section 1, for the body of said Thomas. The statutory provision reads as follows:

"Upon the written application of the dean or other officer of any medical school established by law in the

commonwealth, * * * the institutions commissioner of Boston * * * or other public institutions supported in whole or part at the public expense * * * shall permit such dean or other officer to take, within three days after death, the body of any person, required to be buried at the public expense, who died in such * * * institution under the control of such authorities, to be used within the commonwealth for the promotion of anatomical science. * * *"

Nothing in the complaint suggests that at the time of his death Thomas was not a person who would have to have been buried at the public expense. He had been admitted as a public charge and no indication is given in the complaint that any one other than the public would have had to pay for his burial. Nor is there anything in the complaint which suggests that Thomas did not die in an institution which was under the control of authorities of the type described in the quoted section. Nor is it suggested that the permit sought by the dean or other officer of Boston University was not "within three days after death" of Thomas.

▉▉ The narrow issue is whether if, as is conceded, the defendants acted under the authority of this section they did deprive Mrs. Cranney of that kind of Constitutional right or statutory right to equal protection which falls within the coverage of the Civil Rights Act quoted at the outset of this Opinion.

Upon this point, counsel agree that no prior authority of any court speaks directly as a controlling precedent. There are, of course, numerous cases interpreting the Civil Rights Act, both cases in the Supreme Court of the United States and in this Circuit, which it would be bootless even to cite, much less to comment upon, which show that despite the relatively broad language of the statutes, jurisdictional and substantive, they are to be interpreted with an eye to their

history and with an awareness that they are not the only available means by which persons alleged to have lost their Constitutional protection can appropriately seek relief.

It would be imprudent and is entirely unnecessary for this Court to make any comment directly or indirectly on whether in some other form of action, in some other court, a next of kin of a decedent, both adhering to the Catholic faith, can validly claim that the rites which the next of kin seek to have performed at the deathbed, tomb and burial place of a decedent give rise because of their relationship to the decedent's hope of salvation and the survivors' wish for peace of mind to legal rights. Even if it be assumed that the desire for such rites create legal rights, it by no means follows that these are the types of rights covered by the Civil Rights Statutes.

So, to expand the Civil Rights Statute as to embrace every Constitutional claim of a religious or other nature would in fact be to bring within the initial jurisdiction of the United States District Court all that vast array of controversies which characteristically have been raised in State and other tribunals by challenges founded upon the 14th Amendment to the United States Constitution or upon Article 1, Section 10 of the United States Constitution, or other like provisions. It is unthinkable that any court, duly mindful of the Federal nature of our system, of the great wisdom displayed by local State tribunals, and of the risks of vesting in single District Judges in the Federal Court the vast Constitutional area now sought to be embraced within that jurisdiction, would for a moment accept the contentions of jurisdictional nature now urged upon this tribunal by this plaintiff.

Once again stating that this Court expresses no view upon the religious issues, the Court emphasizes that it has no jurisdiction under Acts of Congress or under Article III of the United States Constitution to hear this case. The Motions to Dismiss are granted.