ISLAND STEAMSHIP LINES, INC., et al.

v.

Paul W. GLENNON et al.

Civ. A. No. 59–581.

United States District Court
D. Massachusetts.

Nov. 3, 1959.

Frederick C. Fisher, Jr., Hale & Dorr, Boston, Mass., for plaintiff.

Lewis H. Weinstein, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This case is before the Court on respondents' motion to dismiss the complaint on the two grounds that the Court by virtue of § 2283 of the Judicial Code (28 U.S.C. § 2283) lacks jurisdiction to grant the injunction and declaratory relief sought, and that the complaint fails to state a claim upon which relief can be granted.

The complaint names four petitioners: (1) Island Steamship Lines, Inc., the owner of Martha's Vineyard, a vessel of approximately 1,100 tons which seemingly has been enrolled pursuant to 46 U.S.C.A. § 251 and § 259 and licensed pursuant to 46 U.S.C.A. § 263; (2) Nantucket Express Lines, Inc., a lessee of wharfs at Hyannis and Nantucket which chartered the Martha's Vineyard from the first petitioner; (3) Joseph T. Gelinas, the president and controlling stockholder of the two corporations just named; and (4) Carl A. Dahlberg, who

"has been engaged as master and pilot of the vessel." Respondents are members of the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority created by Mass.St.1948, c. 544. While the several petitioners have different standings to sue and different rights, they indicate by their pleading and brief that they agree that the two corporate petitioners are the parties whose alleged rights are most directly affected.

Section 6 of Mass.St.1948, c. 544 provides that "While any bonds issued by the Authority remain unpaid [a situation now existing], no person shall operate a vessel of more than one hundred tons gross tonnage to carry by water passengers or freight between the mainland of the commonwealth and the islands of Martha's Vineyard and Nantucket, and the Authority shall be entitled to receive injunctive relief against such operation."

The complaint alleges that the Express Company is prepared to operate the vessel Martha's Vineyard from Hyannis to the Island of Nantucket, a distance of approximately 30 miles over the Atlantic Ocean, and believes that over 70% of the total passengers and freight which it would carry if permitted to operate will originate from or be destined for points outside Massachusetts.

The complaint alleges that respondents had on July 2, 1959 made application to the Massachusetts Superior Court for an injunction to enjoin petitioners from operating the Martha's Vineyard from the mainland to Nantucket; that on July 3, 1959, following a hearing, that court had issued a preliminary injunction; and that, after further hearings on July 15 and 16, 1959, that court permanently enjoined apparently on July 28, 1959 both Island Steamship Lines and Nantucket Express Lines, Inc. and their agents (including presumably the two individual petitioners in the case at bar) "from operating the vessel Martha's Vineyard to carry by water passengers or freight between the mainland of the Commonwealth and Nantucket until the obligations as to the bonds of the Authority referred to in the Acts of 1948, chapter 544, are fulfilled." All of the events just described except the entry of the decree were before complaint was filed in this Court on July 23, 1959.

Petitioners claim that respondents intend to enforce the permanent injunction, that if the injunction is enforced petitioners "will be deprived of their rights, privileges, and immunities secured by the Constitution and laws of the United States to engage in interstate commerce, the coasting trade, and to navigate on the waters of the United States", that the effect of said injunction "will deprive the Petitioners of their property and their rights to engage in the coasting trade with an enrolled vessel of the United States and to engage in interstate commerce," and that petitioners' remedy in the state court is inadequate "for the reason that any appeal from the order of the Superior Court * * * cannot be heard and determined by the Supreme Judicial Court of the Commonwealth during the year 1959."

Petitioners prayed for a preliminary injunction, which on August 13, 1959 Judge McCarthy denied on the ground that "28 U.S.C. § 2283 precludes a United States court from enjoining not merely the state court but also a litigant in the state court from enforcing a state injunction. Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511 [75 S.Ct. 452, 99 L.Ed. 600]."

Petitioners also prayed for a permanent injunction "enjoining the Respondents from enforcing the injunction issued by the Superior Court", for a declaration "that Section 6 of Chapter 544 of the Acts of 1948 of the Commonwealth does not apply to the operation of the Vessel between Hyannis and the Island of Nantucket", and that "this Court determine the amount of damages suffered by the individual Petitioners on account of the deprivation of their rights, privileges, and immunities secured by the Constitution and laws of the United States and order that the Respondents pay said amount to the Petitioners".

In this Court's opinion the complaint must be dismissed because part of it is not within the equity jurisdiction of this Court, and part of it does not state a claim within the federal jurisdiction of this Court.

■ 1. It will be most convenient to consider first the prayer for a permanent injunction restraining respondents from enforcing the state court injunction. This is in effect a prayer for "an injunction to stay proceedings in a State court" as that phrase is used in 28 U.S.C. § 2283 which precludes a Court from granting "an injunction to stay proceedings in a State court." Amalgamated Clothing Workers of America v. Richman Bros., 348 U.S. 511, 75 S.Ct. 452, 454, 99 L.Ed. 600. "That the injunction was a restraint of the parties and was not formally directed against the state court itself is immaterial." Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 218, 84 L.Ed. 537.

■■ But petitioners argue that the general bar of 28 U.S.C. § 2283 does not apply to them because they are seeking to enjoin a violation of the Civil Rights Act and that in this situation Congress has expressly authorized an injunction to stay proceedings in the state court. To this argument the first answer is that the conduct of which petitioners complain is not directed at that kind of political right, privilege, or immunity which is protected by the Civil Rights Act. Cf. Cranney v. Trustees of Boston University, D.C.D.Mass., 139 F.Supp. 130. The second answer is that, with all due deference to the contrary dictum in Cooper v. Hutchinson, 3 Cir., 184 F.2d 119, 124, this Court cannot find that when Congress authorized a suit in equity as a remedy for deprivation of civil rights, (42 U.S.C.A. § 1983) it "expressly authorized" an injunction to stay proceedings in a State court. And this Court's conclusion is supported by Judge Lurton's opinion in Aultman & Taylor Co. v. Brumfield, C.C.N.D.Ohio, 102 F. 7, 12, as well as by the recent opinion in Smith v. Village of Lansing, 7 Cir., 241 F.2d

856, 859. To read the Civil Rights Act as giving authority to enjoin a proceeding in a state court is to ignore the history and policy of the anti-injunction statute so amply reviewed in Amalgamated Clothing Workers of America v. Richman Brothers, supra that it would be vain to retrace the ground.

■■ 2. Even if the prayer for an injunction were, which it is not, within an exception to the bar of 28 U.S.C. § 2283, this prayer would have to be denied first because there is no adequate basis to support intervention by a court of equity, and second because if there were equity jurisdiction this is nonetheless the type of case in which because of conflict with the state courts a federal court should at least temporarily abstain from exercising jurisdiction. Martin v. Creasy, 360 U.S. 219, 226, 79 S.Ct. 1034, 3 L.Ed. 2d 1186. Mere petitioners are seeking to procure from this Court such an interpretation of a Massachusetts state statute as will avoid what they regard as a constitutional doubt, and if they do not procure that interpretation they seek to have this Court declare the statute invalid under the commerce clause of Article I § 8, cl. 3 of the Constitution and under the due process clause of the 14th Amendment. Where an ambiguous state statute may be so interpreted as to avoid a constitutional question it is the general rule that in an equity suit seeking an injunction a federal court will neither interpret, nor enjoin the operation of, the statute but will withhold its hand until the parties have repaired to the state court for an adjudication. Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058; Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Martin v. Creasy, 360 U.S. 219, 226, 79 S.Ct. 1034, 3 L.Ed.2d 1186. As Justice Stewart said in the case last cited, 360 U.S. at page 224, 79 S.Ct. at page 1037, "Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impair-

ment of state functions, and the premature determination of constitutional questions."

The case at bar not only is well within the general rule of abstention but is an extreme example of the propriety of abstention. Here the issues tendered have already been determined by the state trial court and its decree is ripe for appeal to the Supreme Judicial Court of Massachusetts. If that court should decide the constitutional issues adversely to the present petitioners then review by the Supreme Court of the United States would be available. There is no ground to suppose that any advantage, not even speed of final decision, would be gained by this Court exercising jurisdiction.

What petitioners are really seeking is to take the decision of the Massachusetts Superior Court for review not by the Massachusetts Supreme Judicial Court but by this Federal District Court. Such a course is not permissible. Davega-City Radio, Inc. v. Boland, D.C.S.D.N.Y., 23 F.Supp. 969, 970.

■ 3. The considerations set forth in the second subdivision of this opinion, referring to the risk of premature determination of avoidable constitutional issues, and the risk of unnecessary conflict between state and federal courts, make it inappropriate for this Court to render a declaratory judgment interpreting Mass.St.1948, c. 544, § 6. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186.

4. There remain for consideration the questions whether this Court has jurisdiction to award petitioners damages on account of the alleged invasion of their asserted rights and if so whether petitioners have stated a cause of action for damages. No matter how repugnant to the United States Constitution Mass.St. 1948, c. 544, § 6 may be, petitioners have not persuaded this Court that they would be entitled to recover damages in this Court. Petitioners obviously do not and

cannot rest upon some general theory of common law torts. For if that were their ground this Court would not have jurisdiction, there being no diversity of citizenship between the parties. Nor do petitioners rely *simpliciter* on any statute with respect to interstate commerce or enrolled vessels. What petitioners contend is that their rights to engage in interstate commerce are the kind of rights protected by the Civil Rights Act, 42 U.S.C.A. § 1983 and that when such rights were invaded by respondents petitioners became entitled to recover monetary damages from respondents.

But, as has been said above, the economic rights on which plaintiff relies are not included in the political "rights, privileges, or immunities secured by the Constitution" protected by the Civil Rights Act, 42 U.S.C.A. § 1983. Cf. Cranney v. Trustees of Boston University, D.C.D.Mass., 139 F.Supp. 130, 133. Moreover, the action of respondents in procuring an injunction is not an example of the sort of "deprivation" which comes within the scope of the Civil Rights Act. What respondents have done is to bring a *bona fide* suit in the state court against petitioners. There is no suggestion that the local litigation was a sham or contrivance. No matter how the state court decided or decides the litigation, such a suit is not a "deprivation" in the sense of the Civil Rights Act. Cf. Bottone v. Lindsley, 10 Cir., 170 F.2d 705, 707; Spriggs v. Pioneer Carissa Gold Mines, Inc., 10 Cir., 251 F.2d 61, 62. In short, petitioners have failed to state any cause of action under the Civil Rights Act, and so cannot recover damages allowable by the terms of that statute.

Motion to dismiss granted on the grounds that insofar as the complaint seeks injunctive relief and a declaratory judgment the complaint fails to state a case appropriate for equitable jurisdiction and insofar as the complaint seeks damages it presents a claim not within the federal jurisdiction of this Court and also fails to state a cause of action on the merits.