**IDLEWILD BON VOYAGE LIQUOR CORPORATION, Plaintiff,**

**v.**

**Thomas E. ROHAN, Martin C. Epstein, William H. Morgan, Grant F. Daniels and Samuel M. Birnbaum, being the Chairman, Members and Commissioners of the State Liquor Authority of the State of New York, Defendants.**

United States District Court
S. D. New York.

Nov. 4, 1960.

---

3. Exhibit "A", transcript pp. 78–79, medical report of William K. Weitzel, M.D., dated August 16, 1957.

Kelly & Schwartz, New York City, Charles H. Tuttle, John F. Kelly, Charles T. Hall, New York City, of counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of New York, Philip Watson, Asst. Atty. Gen. of New York, of counsel, for defendants.

BICKS, District Judge.

Plaintiff, a New York corporation, conducts business from premises it occupies at the New York International Airport, County of Queens, pursuant to a lease by the terms of which the demised premises may be used only as an office for the receipt of orders for export of United States customs bonded wines and liquors. The defendants constitute the New York State Liquor Authority, an administrative agency created under Article 2 of the Alcoholic Beverage Control Law of the State of New York.

Wines and liquors sold by the plaintiff are not for consumption in the State of New York or in any other state, territory or possession of the United States.

The premises occupied by plaintiff have been approved by and are under the supervision of the United States Bureau of Customs. The wines and liquors sold by plaintiff are purchased solely for export from vendors who withdraw the same from Class 6 United States Government bonded manufacturing and United States Customs bonded warehouses for rewarehousing at the United States Customs-controlled space in plaintiff's leased premises. Every bottle withdrawn by plaintiff is, pursuant to the provisions of the Internal Revenue Code and applicable regulations thereunder, labeled "Bottled for export from the U.S.A." Plaintiff complies as well with § 311 of the Tariff Act as amended, 19 U.S.C.A.

§ 1311, § 5301 of the Internal Revenue Code, 26 U.S.C.A. § 5301, and the regulations promulgated under each of said statutes, the design and purpose whereof being to prevent diversion of any of the bonded wines and liquors to any use other than export from the United States.

Plaintiff receives orders and payment at its premises at the airport from passengers departing by non-stop planes destined for foreign countries. The merchandise is delivered to the air line with approved documents for foreign export, delivery to be made to the passenger-purchaser only upon arrival at the foreign destination. The passenger is thus enabled to export for delivery to himself upon arrival abroad, a quantity of liquor not exceeding the maximum permitted for duty-free import at the point of disembarkation, at a substantial saving. The Treasury Department has expressly approved these procedures and has ruled that sales so consummated constitute an exportation of merchandise within the meaning of § 311 of the Tariff Act.

Plaintiff made inquiry of the New York State Liquor Authority whether conduct of its business in the manner above set forth contravenes the New York State Alcoholic Beverage Control Law. Before replying, the State Liquor Authority asked the New York State Attorney General for an opinion. He ruled (See 1960, Op.Atty.Gen. June 30) that the business of the plaintiff constituted sales or selling within the meaning of § 3, subd. 28 of the New York State Alcoholic Beverage Control Law;[1] that said law contains no provision that would authorize issuance of a license to plaintiff to conduct its business, and that under § 100, subd. 1[2] of the State Law no

---

1. Sec. 3, subd. 28 provides as follows:

    " 'Sale' means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage and/or a warehouse receipt pertaining thereto. 'To sell' includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the state."

2. Sec. 100, subd. 1 provides:

    "No person shall manufacture for sale or sell at wholesale or retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter."

person is permitted to sell any alcoholic beverage within the state without a license. The New York Importers & Distillers Association circularized its members advising that in view of the position of the Attorney General and of § 62 of the Alcoholic Beverage Control Law, they could not legally fill plaintiff's orders. Plaintiff has not since been able to make purchases to meet its requirements and faces the prospect of closing its doors, with consequent substantial damage.

Plaintiff urges that § 3, subd. 28, § 62 and § 100, subds. 1 and 2 of the New York State Alcoholic Beverage Control Law, as sought to be applied to it are repugnant to (i) the commerce clause, (ii) the clause prohibiting a state from laying imposts or duties on imports or exports without the consent of Congress, and (iii) the supremacy clause of the constitution and therefore unconstitutional. These contentions rest on the claim that the Tariff Act of 1930, as amended, and the regulations adopted thereunder, taken together with the applicable provisions of the Internal Revenue Code, constitute a comprehensive, exclusive and preemptive scheme duly adopted by Congress for the regulation, encouragement and promotion of foreign commerce in, and export of, bonded wines and liquors.

Plaintiff seeks declaratory and injunctive relief and has moved for the impanelling of a three-judge district court pursuant to 28 U.S.C.A. §§ 2281, 2284.

The threshold issue is whether the federal courts should accept jurisdiction now since the issues have never been presented to or passed upon by the state courts. In a series of cases beginning with Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, the Supreme Court has set out the procedure for resolving constitutional issues which are reasonably open to construction. " * * * [N]o principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them. See, e. g., Railroad Commission of Texas v. Pullman Co., supra; City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Shipman v. Du Pre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L. Ed. 983; Government & Civic Employees Organizing Committee, C. I. O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed. 2d 894. This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication. See City of Chicago v. Fieldcrest Dairies, Inc., supra, at 172–173, 62 S.Ct. at page 988." Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 176–177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152. "Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions. * * *" Martin v. Creasy, 1959, 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186.

The controversy between Idlewild and the Liquor Authority comes to the court in precisely the tentative and hypothetical posture with which Pullman and its progeny are concerned. The State Attorney General rendered an opinion and acting upon that opinion the Liquor Authority advised plaintiff that its operation is "illegal". Neither the Attorney General's opinion nor the action of the Liquor Authority has been reviewed in the State Courts.

State court interpretation of state policies is especially desirable where the statute in question "provides a

unified method for the formation of policy and determination of cases by the [state administrative body] and by the state courts." Burford v. Sun Oil Co., 1943, 319 U.S. 315, 333, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424.

The Alcoholic Beverage Control Law provides a comprehensive and unified scheme for the regulation and control of the sale and distribution of liquor through the State Liquor Authority. The Authority has broad discretionary powers to license the sale of liquor at wholesale and retail, to limit, revoke or suspend outstanding licenses, to specify standards of manufacture and fermentation, to hold hearings and subpoena witnesses, and to promulgate rules and regulations to promote the foregoing functions. Alcoholic Beverage Control Law, § 17; John J. King, Inc. v. O'Connell, 1952, 280 App.Div. 852, 113 N.Y.S.2d 329; Application of Gambino, 1957, 4 A.D.2d 37, 162 N.Y.S.2d 723; Berkowitz v. Rohan, 1959, 21 Misc.2d 922, 193 N.Y.S.2d 345.

In Burford, supra, where the validity of Texas oil drilling permits was attacked in the federal court, the Supreme Court, characterizing the Texas statutes under which the permits were granted as "part of the general regulatory system devised for the conservation of oil and gas", 319 U.S. at page 318, 63 S.Ct. at page 1099, indicated that "question[s] of regulation of the industry by the State administrative agency * * * so clearly involves basic problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them." 319 U.S. at page 332, 63 S.Ct. at page 1106.

"[N]o matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination. * * * In this situation, a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. at pages 499–500, 61 S. Ct. at page 645. In the light of the circumstances of this case §§ 3, subd. 28, 62 and 100, subds. 1 and 2 may be construed by the state courts to avoid or transform the issues raised herein. See, e. g., During v. Valente, 267 App.Div. 383, 46 N.Y. S.2d 385.

■ Martin v. Creasy, 1959, supra, teaches that irreparable injury vel non, the District Court should not adjudicate a constitutional issue presented in a hypothetical posture. In that case, plaintiffs sought immediate relief from alleged irreparable injury as the result of the operation of Pennsylvania's limited access highway statute. Impressed by allegations of immediate irreparable harm similar to those urged by plaintiff on this motion, the District Court was persuaded that refusal to exercise jurisdiction would cause plaintiffs to "suffer substantial financial losses during the time it would take to litigate the constitutionality of the statute in the State Courts, which losses could never be recouped if the statute were eventually declared to be unconstitutional." Creasy v. Stevens, D.C.W.D.Pa.1958, 160 F. Supp. 404, 409, reversed Martin v. Creasy, supra. The Supreme Court held, "[a]ssuming * * * that there was a basis to support intervention by a court of equity, the District Court, we think, should nevertheless have declined to adjudicate this controversy." Martin v. Creasy, supra, 360 U.S. at page 224, 79 S.Ct. at page 1037.

■ Although the substantive issues raised in the complaint may not be considered by the judge to whom application under 28 U.S.C.A. § 2281 is made, he has the power to retain jurisdiction pending state court adjudication where, as here, there is insufficient basis to support intervention by a federal court of equity. Snyder's Drug Stores v. Taylor, 8 Cir., 1955, 227 F.2d 162; Island Steamship Lines, Inc. v. Glennon, D.C.Mass. 1959, 178 F.Supp. 292, 295, 296;

438

Linehan v. Waterfront Commission of New York Harbor, D.C.S.D.N.Y.1953, 116 F.Supp. 401.

Motion for impanelling of a three-judge court denied, with leave to renew after the state court has ruled.

So ordered.