377 U.S. 324 (1964)
HOSTETTER
v.
IDLEWILD BON VOYAGE LIQUOR CORP.
No. 116.
Supreme Court of United States.
Argued March 23, 1964.
Decided June 1, 1964.
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.
Irving Galt, Assistant Solicitor General of New York, argued the cause for appellants. With him on the briefs were Louis J. Lefkowitz, Attorney General of New York, and George D. Zuckerman, Assistant Attorney General.
Charles H. Tuttle argued the cause for appellee. With him on the brief was John F. Kelly.
MR. JUSTICE STEWART delivered the opinion of the Court.
The Twenty-first Amendment to the Constitution, which repealed the Eighteenth, provides in its second section that "The transportation or importation into any *325 State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." This appeal requires consideration of the relationship of this provision of the Twenty-first Amendment to other provisions of the Constitution, particularly the Commerce Clause.[1]
The appellee (Idlewild) is engaged in the business of selling bottled wines and liquors to departing international airline travelers at the John F. Kennedy Airport in New York. Its place of business is leased from the Port of New York Authority for use solely as "an office in connection with the sale . . . of in-bond wines and liquors." Idlewild accepts orders only from travelers whose tickets and boarding cards indicate their imminent departure. A customer gets nothing but a receipt at the time he gives his order and makes payment. The liquor which he orders is transferred directly to the departing aircraft on documents approved by United States Customs, and is not delivered to the customer until he arrives at his foreign destination.
The beverages sold by Idlewild are purchased by it from bonded wholesalers located outside New York State who deal in tax-free liquors for export. Merchandise ordered by Idlewild is withdrawn from bonded warehouses on approved Customs documents, copies of which are mailed by the wholesalers both to Idlewild and to the United States Customs Office at the airport. A third sealed copy of the document is given to the bonded trucker who delivers it to the Customs Office at the airport after he has transported the shipment to Idlewild's place of business. The contents of each shipment are recorded by Idlewild, as are withdrawals from inventory *326 whenever a sale is made, and when an entire shipment has been sold, these records are turned over to Customs officials. Idlewild's records and its physical inventory, as well as the transfer of the liquor from the bonded trucks to Idlewild's premises and from those premises to the departing aircraft, are at all times open to inspection by the Bureau of Customs. Before Idlewild commenced these business operations in 1960, the Bureau of Customs inspected its place of business and explicitly approved its proposed method of operations.
Idlewild commenced doing business in the spring of 1960. A few weeks later, the New York State Liquor Authority, whose members are the appellants in this case, informed Idlewild, upon the advice of the Attorney General of New York, that its business was illegal under the provisions of the New York Alcoholic Beverage Control Law, because the business was unlicensed and unlicensable under that law.[2] Idlewild thereupon brought the present *327 action for an injunction restraining the appellants from interfering with its business, and for a judgment declaring that the provisions of the New York statute, as applied to its business, were repugnant to the Commerce Clause of the Constitution, and, under the Supremacy Clause, to the Tariff Act of 1930, under which the Bureau of Customs had approved Idlewild's business operations.[3]
After lengthy procedural delays,[4] a three-judge District Court granted the requested relief. 212 F. Supp. 376. The court expressed doubt that the New York Alcoholic Beverage Control Law was intended to apply to a business such as that carried on by Idlewild, both because of the manifest irrelevance to such a business of many of the law's provisions,[5] and because the New York courts *328 had held that the law was inapplicable to the sale of liquor in the Free Trade Zone of the Port of New York. During v. Valente, 267 App. Div. 383, 46 N. Y. S. 2d 385. See also Rosenblum v. Frankel, 279 App. Div. 66, 108 N. Y. S. 2d 6. In view of the posture of the litigation, the court declined, however, to defer deciding the merits of the controversy pending a construction of the statute by the New York courts, although recognizing that "a technical application of the doctrine of abstention" would under ordinary circumstances counsel such a course.
On the merits the court concluded, after reviewing the relevant cases, that the Commerce Clause rendered constitutionally impermissible New York's attempt wholly to terminate Idlewild's business operations. The court conceded that New York has broad power under the Twenty-first Amendment to supervise and regulate the transportation of liquor through its territory for the purpose of guarding against a diversion of such liquor into domestic channels, but pointed out that "the Liquor Authority has neither alleged nor proved the diversion of so much as one bottle of plaintiff's merchandise to users within the state of New York." 212 F. Supp., at 386. We noted probable jurisdiction, 375 U. S. 809, and for the reasons which follow, we affirm the judgment of the District Court.
We hold first that the District Court did not err in declining to defer to the state courts before deciding this controversy on its merits. The doctrine of abstention is equitable in its origins, Railroad Comm'n v. Pullman Co., 312 U. S. 496, 500-501, and this Court has held that, even *329 though constitutional issues be involved, "reference to the state courts for construction of the statute should not automatically be made." N. A. A. C. P. v. Bennett, 360 U. S. 471. Unlike many cases in which abstention has been held appropriate, there was here no danger that a federal decision would work a disruption of an entire legislative scheme of regulation.[6] We therefore accept the District Court's decision that abstention was unwarranted here, where neither party requested it and where the litigation had already been long delayed, despite the plaintiff's efforts to expedite the proceedings.[7]
Turning, then, to the merits of this controversy, the basic issue we face is whether the Twenty-first Amendment so far obliterates the Commerce Clause as to empower New York to prohibit absolutely the passage of liquor through its territory, under the supervision of the United States Bureau of Customs acting under federal law,[8] for delivery to consumers in foreign countries. For it is not disputed that, if the commodity involved here were not liquor, but grain or lumber, the Commerce Clause would clearly deprive New York of any such power. Lemke v. Farmers Grain Co., 258 U. S. 50; Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111; Oklahoma v. Kansas Nat. Gas Co., 221 U. S. 229.
*330 This Court made clear in the early years following adoption of the Twenty-first Amendment that by virtue of its provisions a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders. Thus, in upholding a State's power to impose a license fee upon importers of beer, the Court pointed out that "[p]rior to the Twenty-first Amendment it would obviously have been unconstitutional to have imposed any fee for that privilege. The imposition would have been void, . . . because the fee would be a direct burden on interstate commerce; and the commerce clause confers the right to import merchandise free into any state, except as Congress may otherwise provide." State Board v. Young's Market Co., 299 U. S. 59, 62.[9] In the same vein, the Court upheld a Michigan statute prohibiting Michigan dealers from selling beer manufactured in a State which discriminated against Michigan beer. Brewing Co. v. Liquor Comm'n, 305 U. S. 391. "Since the Twenty-first Amendment, . . . the right of a state to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause . . . ." Id., at 394. See also Finch & Co. v. McKittrick, 305 U. S. 395.
This view of the scope of the Twenty-first Amendment with respect to a State's power to restrict, regulate, or prevent the traffic and distribution of intoxicants within its borders has remained unquestioned. See California v. Washington, 358 U. S. 64. Thus, in Ziffrin, Inc., v. Reeves, 308 U. S. 132, there was involved a Kentucky statute, "a long, comprehensive measure (123 sections) *331 designed rigidly to regulate the production and distribution of alcoholic beverages through means of licenses and otherwise. The manifest purpose is to channelize the traffic, minimize the commonly attendant evils; also to facilitate the collection of revenue. To this end manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions and subject to constant control by the State." Id., at 134. The Court upheld a provision of that "comprehensive measure" which prohibited a domestic manufacturer of liquor from delivering his product to an unlicensed private carrier. The Court noted that "Kentucky has seen fit to permit manufacture of whiskey only upon condition that it be sold to an indicated class of customers and transported in definitely specified ways. These conditions are not unreasonable and are clearly appropriate for effectuating the policy of limiting traffic in order to minimize well-known evils, and secure payment of revenue. The statute declares whiskey removed from permitted channels contraband subject to immediate seizure. This is within the police power of the State; and property so circumstanced cannot be regarded as a proper article of commerce." Id., at 139.[10]
To draw a conclusion from this line of decisions that the Twenty-first Amendment has somehow operated to *332 "repeal" the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification. If the Commerce Clause had been pro tanto "repealed," then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor. Such a conclusion would be patently bizarre and is demonstrably incorrect. In Jameson & Co. v. Morgenthau, 307 U. S. 171, "the Federal Alcohol Administration Act was attacked upon the ground that the Twenty-first Amendment to the Federal Constitution gives to the States complete and exclusive control over commerce in intoxicating liquors, unlimited by the commerce clause, and hence that Congress has no longer authority to control the importation of these commodities into the United States." The Court's response to this theory was a blunt one: "We see no substance in this contention." Id., at 172-173. See also United States v. Frankfort Distilleries, 324 U. S. 293. (Sherman Act.)
Both the. Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.
This principle is reflected in the Court's decision in Collins v. Yosemite Park Co., 304 U. S. 518. There it was held that the Twenty-first Amendment did not give California power to prevent the shipment into and through her territory of liquor destined for distribution and consumption in a national park. The Court said that this traffic did not involve "transportation into California `for delivery or use therein' " within the meaning of the Amendment. "The delivery and use is in the Park, and under a distinct sovereignty." Id., at 538. This ruling was later characterized by the Court as holding *333 "that shipment through a state is not transportation or importation into the state within the meaning of the Amendment." Carter v. Virginia, 321 U. S. 131, 137.[11] See also Johnson v. Yellow Cab Co., 321 U. S. 383, aff'g, 137 F. 2d 274.
We may assume that if in Collins California had sought to regulate or control the transportation of the liquor there involved from the time of its entry into the State until its delivery at the national park, in the interest of preventing unlawful diversion into her territory, California would have been constitutionally permitted to do so.[12] But the Court held that California could not prevent completely the transportation of the liquor across the State's territory for delivery and use in a federal enclave within it.
A like accommodation of the Twenty-first Amendment with the Commerce Clause leads to a like conclusion in the present case. Here, ultimate delivery and use is not in New York, but in a foreign country. The State has not sought to regulate or control the passage of intoxicants through her territory in the interest of preventing their unlawful diversion into the internal commerce of the State. As the District Court emphasized, this case does not involve "measures aimed at preventing unlawful *334 diversion or use of alcoholic beverages within New York." 212 F. Supp., at 386. Rather, the State has sought totally to prevent transactions carried on under the aegis of a law passed by Congress in the exercise of its explicit power under the Constitution to regulate commerce with foreign nations. This New York cannot constitutionally do.
Affirmed.
MR. JUSTICE BRENNAN took no part in the consideration or decision of this case.
MR. JUSTICE BLACK, with whom MR. JUSTICE GOLDBERG joins, dissenting.
The appellee, Idlewild Bon Voyage Liquor Corporation, buys wines and intoxicating liquors from bonded wholesale warehouses, brings them into the State of New York, and sells them at retail in the John F. Kennedy Airport. Idlewild does not have and cannot obtain a New York license; therefore its business is in violation of New York law. Idlewild keeps a stock of liquor in New York under Customs inspection, and customers come into Idlewild's shop, choose the kind of liquor they want, and pay for it. These retail sales are just like sales made by New York's licensed and regulated liquor dealers, with a single difference: other New York retailers normally make delivery across the counter while Idlewild arranges with its customers to put their purchases, under United States Customs supervision, aboard planes so that the customers take physical possession of the liquor, not in New York, but at destinations abroad. The airport where the sales take place is not a federal enclave where even as to liquor federal law can constitutionally control,[1] *335 but is New York territory subject to New York, not federal, jurisdiction. The Court nevertheless strikes down New York's law barring Idlewild from selling intoxicating liquors in New York. The ground for invalidating the law is that it conflicts with the Commerce Clause and with Treasury regulations promulgated under 19 U. S. C. § 1311 under which Idlewild's sales and deliveries to foreign-bound planes are for customs purposes supervised by Customs officials. I think, however, that while Customs officials have the right to perform their duties relative to customs, the Twenty-first Amendment confers exclusive jurisdiction upon the State of New York to regulate all liquor business carried on in New York. Section 2 of this Amendment, which became effective December 1933, provides:
"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
Even though the language of this Amendment clearly leaves the States free to control the importation of and traffic in liquors within their boundaries, it was argued in State Board v. Young's Market Co., 299 U. S. 59 (1936), that it would be a violation of the Commerce Clause and of the Equal Protection Clause for a State to require a fee of persons importing beer from outside the State. Pointing out that such a discrimination would have violated the Commerce Clause before adoption of the Twenty-first Amendment, this Court held that since that Amendment a State was not required to "let imported liquors compete with the domestic on equal terms. To say that, would involve not a construction of the Amendment, but a rewriting of it." Id., at 62. The Court went on to hold that the claim that the State's discriminatory "statutory provisions and the regulations are void under *336 the equal protection clause may be briefly disposed of. A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth." Id., at 64. Following the Young's Market case, this Court has said and repeated that since the Twenty-first Amendment "the right of a State to prohibit or regulate the importation of intoxicating liquor is not limited by the commerce clause." Joseph S. Finch & Co. v. McKittrick, 305 U. S. 395, 398 (1939); Indianapolis Brewing Co. v. Liquor Control Comm'n, 305 U. S. 391, 394 (1939). The principles of these cases have been uniformly followed until today. E. g., California v. Washington, 358 U. S. 64 (1958); Ziffrin, Inc., v. Reeves, 308 U. S. 132 (1939). The Court today attempts to distinguish this case from our previous cases, but I find myself unpersuaded by the Court's distinction.
In Young's Market, the Court found it so clear that the "broad language" of the Twenty-first Amendment gave States exclusive power to regulate or tax liquor transactions in those States that it rather impatiently refused to consider the Amendment's history urged in limitation of that language. Young's Market, supra, 299 U. S., at 63-64. I agree with Justice Brandeis that history should not be necessary to prove what is obvious. But now that the Amendment is interpreted in a way that takes away part of the power that I think was given to the States by the Amendment and confers it on Customs officials, it becomes appropriate to look to the history of the Amendment's adoption. As reported by the Senate Committee on the Judiciary in S. J. Res. 211, 72d Cong., 2d Sess., the proposed amendment provided in Section 2, "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." 76 Cong. Rec. 4138 (1933). That language is in the present Amendment. *337 But the proposal also contained a Section 3, not found in the present Amendment; that Section provided, "Congress shall have concurrent power to regulate or prohibit the sale of intoxicating liquors to be drunk on the premises where sold." Ibid. Proposing to leave even this remnant of federal control over liquor traffic gave rise to the only real controversy over the language of the proposed Amendment. Senator Wagner of New York, who could not have known that his State would because of today's opinion be the first to be denied control of liquor traffic within the State, opposed Section 3 because it would defeat the proposed Amendment's purpose "to restore to the States control of their liquor problem." Id., at 4145. Senator Wagner argued that giving the Federal Government even "apparently limited power" would allow that power to be "extended to boundaries now undreamed of and unsuspected" by those supporting the proposed Amendment. Id., at 4147. It is clear that the opposition to Section 3 and its elimination from the proposed Amendment rested on the fear, often voiced during the Senate debate,[2] that any grant of power to the Federal Government, even a seemingly narrow one, could be used to whittle away the exclusive control over liquor traffic given the States by Section 2. Having heard those fears expressed, Senator Robinson of Arkansas, the Senate Majority Leader, asked for a vote "to strike out section 3." Id., at 4171. It was because of these fears that the Senate then voted to take Section 3 out of the proposed Amendment while retaining Section 2 and its broad grant of power to the States. Id., at 4179.
During the debate the Senators brought out quite clearly what plenary powers Section 2, as it now appears in the Twenty-first Amendment, meant to give the States. *338 Senator Blaine of Wisconsin, chairman of the subcommittee which had held hearings on the resolution and floor manager of the resolution in the Senate, agreed that Section 3 "ought to be taken out of the resolution" and Section 2 left in, because the "purpose of section 2 is to restore to the States by constitutional amendment absolute control in effect over interstate commerce affecting intoxicating liquors which enter the confines of the States." Id., at 4143. Speaking of the same section, Senator Walsh of Montana, also a member of the subcommittee, said, "The purpose of the provision in the resolution reported by the committee was to make the intoxicating liquor subject to the laws of the State once it passed the State line and before it gets into the hands of the consignee as well as thereafter." Id., at 4219.
The legislative history, of which these passages are typical, should be enough to prove that when the Senators agreed to Section 2 they thought they were returning "absolute control" of liquor traffic to the States, free of all restrictions which the Commerce Clause might before that time have imposed. Moreover, by rejecting Section 3, they thought they were seeing to it that the Federal Government could not interfere with or restrict the State's exercise of the power conferred by the Amendment. Therefore, that the liquor in this case is supervised by United States Customs officials for customs purposes is immaterial. The Amendment promises that each State shall decide what is best for itself in regulating liquor traffic within its boundaries, and the Amendment no more empowers Customs officials to make that decision for a State than it empowers Congress to make it. This view was forcefully expressed by Senator Wagner, who, when urging that Section 3 be eliminated from the proposed Amendment and the States be given complete control of liquor traffic, said: "let the people of each State deal with that subject, and they will do it more effectively *339 and more successfully than the Federal Government has done, because it is not the business of the Federal Government." Id., at 4146.
That the liquors involved in this case have, in Walsh's and Blaine's words, "passed the State line" and "enter[ed] the confines" of the State is beyond dispute. The debates from which I have quoted show that the Senators intended that, once the liquors should enter New York, they would be subject to the "absolute control" of that State. The Twenty-first Amendment promises New York no less.
Idlewild's liquors, once in the State, are sold at retail to airline passengers at Kennedy Airport. No one disputes that Idlewild thus competes with other New York liquor dealers for the trade of these consumers of liquor. To allow this business to go unregulated by New York is to interfere with the regulatory power which this Court, in State Board v. Young's Market Co., supra, said each State has under the Twenty-first Amendment. There, id., at 63, the Court said that a State is perfectly free to set up a state liquor monopoly or to confer a liquor monopoly upon some one dealer in the State. It is equally obvious that New York is free to allow only a limited number of dealers to engage in the liquor business. It might do this because it wanted to discourage consumption, or to make it easier to police the liquor traffic, or to accomplish some other objective the State thought worthwhile to protect against the evils which can flow from the traffic. In particular New York might want to see that sales are not diverted to Idlewild from other dealers licensed and regulated by the State. Yet today's interpretation of the Amendment renders New York impotent to prevent such diversions. Justification for this result is sought by saying that the Customs officials must be unhampered in their duties. But giving Customs officials the power to prevent evasion of customs duties does not immunize *340 liquor dealers from state regulation. Nor does state regulation interfere with federal officials' performance of their duties. Whether Idlewild stays in business is no legitimate concern of the Customs officials; their concern is that, if Idlewild does do a liquor business, tax-free liquor not be diverted within the country and customs duties not thereby be evaded. Nothing in the New York licensing scheme interferes with the federal officials' performance of their duty.
The invalidation of New York's regulation of Idlewild, I think, makes inroads upon the powers given the States by the Twenty-first Amendment. Ironically, it was against just this kind of judicial encroachment that Senators were complaining when they agreed to S. J. Res. 211 and paved the way for the Amendment's adoption. Senator Borah of Idaho traced the history of state regulation of liquor traffic from Justice Taney's decision in the License Cases, 5 How. 504 (1847), which upheld state power over liquor, through Bowman v. Chicago & N. R. Co., 125 U. S. 465 (1888), which Senator Borah said "wiped out the Taney decision," to Leisy v. Hardin, 135 U. S. 100 (1890), which made the States "powerless to protect themselves against the importation of liquor into the States." 76 Cong. Rec. 4170-4171 (1933). Because of this judicial history, Senator Borah, wanting to guarantee that the States would not be rendered powerless over liquor traffic, expressed his uneasiness at leaving anything less than a Constitutional Amendment "to the protection of the Supreme Court of the United States." Ibid. Yet, instead of protecting the States' power to control liquor traffic, today's interpretation of the Twenty-first Amendment leaves New York powerless to regulate Idlewild's business and others like it and puts the power instead in the hands of United States Customs officials. I would not interpret the Amendment that way.
NOTES
[1] "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U. S. Const., Art. I, § 8, cl. 3.
[2] The opinion of the New York Attorney General was based primarily upon the following provisions of the New York law:

" `Sale' means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person, whether principal, proprietor, agent, servant or employee of any alcoholic beverage and/or a warehouse receipt pertaining thereto. `To sell' includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell and shall include the delivery of any alcoholic beverage in the state." New York Alcoholic Beverage Control Law, § 3, Subd. 28.
"No person shall manufacture for sale or sell at wholesale or retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter." New York Alcoholic Beverage Control Law, § 100, Subd. 1.
"No premises shall be licensed to sell liquors and/or wines at retail for off premises consumption, unless said premises shall be located in a store, the entrance to which shall be from the street level and located on a public thoroughfare in premises which may be occupied, operated or conducted for business, trade or industry or on an arcade or sub-surface thoroughfare leading to a railroad terminal." New York Alcoholic Beverage Control Law, § 105, Subd. 2.
[3] See 19 U. S. C. § 1311. The complaint also relied on the Export-Import Clause of the Constitution, Art. I, § 10, cl. 2, but such reliance was obviously misplaced, because New York has not sought to "lay any Imposts or Duties" upon the merchandise sold by Idlewild.
[4] The appellee's original motion to empanel a three-judge court under 28 U. S. C. §§ 2281 and 2284 was denied by a single district judge, who retained jurisdiction pending resolution of the substantive issues by the state courts. 188 F. Supp. 434. The Court of Appeals for the Second Circuit dismissed on appeal on the ground that it was without jurisdiction, though expressing the view that a three-judge court should have been convened. 289 F. 2d 426. The appellee's renewed request for a three-judge court was then denied by a district judge on the ground that previous District Court rulings in the litigation had established the "law of this case" and that the Court of Appeals' statement that a three-judge court should have been convened was "dictum." 194 F. Supp. 3. After granting certiorari and a motion for leave to file a petition for a writ of mandamus, 368 U. S. 812, this Court, holding that a three-judge court should have been empaneled, remanded the case to the District Court "for expeditious action" to that end. 370 U. S. 713.
[5] The court noted, for example: "The definition of sale in Section 3 (28) provides that `"To sell" . . . shall include the delivery of any alcoholic beverage in the state.' This, of course, is inapplicable to plaintiff's sales. Whatever may be the purpose of Section 105 (2) in requiring that a retail liquor store have an entrance from the street level and be located on a public thoroughfare, the requirements, which may be appropriate where liquor purchases are delivered directly to the customer, seem quite irrelevant to a concern which sells liquor exclusively for delivery in a foreign country." 212 F. Supp., at 379.
[6] Cf. Government Employees v. Windsor, 353 U. S. 364; American Federation of Labor v. Watson, 327 U. S. 582; Great Lakes Co. v. Huffman, 319 U. S. 293; Burford v. Sun Oil Co., 319 U. S. 315, 323-325; Chicago v. Fieldcrest Dairies, 316 U. S. 168.
[7] See Louisiana P.& L. Co. v. Thibodaux City, 360 U. S. 25, 29, 31; Allegheny County v. Mashuda Co., 360 U. S. 185, 196-197.
[8] The appellants have argued that Idlewild's operations do not in fact conform to the various federal statutory and administrative standards under authority of which the operations are conducted. But there is no indication that the Bureau of Customs has ever questioned the regularity of Idlewild's operations under the relevant federal law and regulations.
[9] Likewise, in Mahoney v. Triner Corp., 304 U. S. 401, the Court held that the Equal Protection Clause is not applicable to imported intoxicating liquor. "A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth." Id., at 404.
[10] Quite independently of the Twenty-first Amendment, the Court has sustained a State's power, within the confines of the Commerce Clause, to regulate and supervise the transportation of intoxicants through its territory. See Duckworth, v. Arkansas, 314 U. S. 390; Carter v. Virginia, 321 U. S. 131. In Duckworth, Mr. Justice Jackson relied on the Twenty-first Amendment in concurring in the judgment. 314 U. S., at 397. In Carter, MR. JUSTICE BLACK, Mr. Justice Frankfurter, and Mr. Justice Jackson wrote separate concurrences, relying upon the Twenty-first Amendment. 321 U. S., at 138, 139. Cf. Gordon v. Texas, 355 U. S. 369, upholding a similar state statute in a per curiam citing both the Twenty-first Amendment and Carter v. Virginia, supra.
[11] Prior to the Eighteenth Amendment, Congress passed laws giving the States a large degree of autonomy in regulating the importation and distribution of intoxicants. These laws, the Wilson Act and the Webb-Kenyon Act, are still in force. 27 U. S. C. §§ 121, 122. In United States v. Gudger, 249 U. S. 373, the Court held that under the Reed amendment of 1917passed by Congress to strengthen these laws, 39 Stat. 1058, 1069a prohibition upon transportation "into" a State did not prohibit the "movement through one State as a mere incident of transportation to the [place] into which it is shipped." Id., at 375.
[12] See cases cited in note 10, supra.
[1] Compare Collins v. Yosemite Park & Curry Co., 304 U. S. 518 (1938); Johnson v. Yellow Cab Transit Co., 321 U. S. 383 (1944).
[2] E. g., 76 Cong. Rec. 4143 (1933) (Senator Blaine); 4144-4148 (Senator Wagner); 4177-4178 (Senator Black).