**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**Vern MILLER, Attorney General of the State of Kansas, et al., Defendants.**

**Civ. A. No. T-5215.**

United States District Court,
D. Kansas.

May 17, 1973.

---

William Clarke, Washington, D. C., Charles N. Henson, of Eidson, Lewis, Porter & Haynes, Topeka, Kan., for plaintiff.

Vern Miller, Atty. Gen., John R. Martin, First Asst. Atty. Gen., Topeka, Kan., John Thomas Reid, County Atty., Newton, Kan., for defendants.

Before HILL, Circuit Judge, and TEMPLAR and THEIS, District Judges.

## OPINION

TEMPLAR, District Judge.

Plaintiff commenced this action seeking a permanent injunction to restrain defendants, their agents, servants and employees from enforcing against plaintiff in its operation of trains in interstate commerce the provisions of Kansas Statutes Annotated (K.S.A.) §§ 41–803, 41–407(1) .and ·(2), 41–724, 41–901, and K.S.A.1971 Supp. § 41–2604.[1]

1. K.S.A. 41–803

"It shall be unlawful for any person to own, maintain, operate or conduct either directly or indirectly, an open saloon. For the purposes of this section, the words 'open saloon' mean any place, public or private, where alcoholic liquor is sold or offered for sale or kept for sale by the drink or in any quantity of less than one-half pint, or sold, offered for sale, or kept for sale for consumption on the premises where sold."

K.S.A. 41–407(1) and (2)

"It shall be unlawful for any person (1) to evade, or attempt to evade, the payment of tax or duty on any such alcoholic liquor, in any manner whatever, and upon conviction thereof, in addition to the penalty prescribed for the violation of this act, such person shall forfeit and pay, as a part of costs in such action, double the amount of the tax so evaded or attempted to be evaded;

"(2) to have in his possession any cask or package of such liquor, without having thereon each mark and stamp required therefor by law; and such cask or package not having the mark or stamp as aforesaid, shall be forfeited to the state of Kansas . . . .
"Any person who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor . . . ."

K.S.A. 41–724

"No person or common carrier shall haul or transport alcoholic liquor in or into this state, for sale, or for storage and sale in this state, upon which the required labeling or gauging fee, tax, duty or license has not been paid, except for delivery to distributors, distillers, manufacturers, importers, blenders, rectifiers, wholesalers or jobbers maintaining a bonded warehouse within this state."

K.S.A. 41–901

"Any person who . . . . sells alcoholic liquor . . . at any place within the state without having first obtained a valid license so to do under the provisions of this act . . . shall for a first offense be fined not

Plaintiff alleged that the Kansas statutes are unconstitutional and void in their application to plaintiff and its operation of trains in interstate commerce through the State of Kansas in that each is repugnant to the provisions of Article I, Section 8, Clause 3 of the Constitution of the United States as an unconstitutional burden on and interference with interstate commerce; the Fourteenth Amendment to the Constitution of the United States, as an unreasonable exercise of the police power of the State of Kansas not tending to promote the health, safety and welfare of the citizens and residents of the State of Kansas and a denial of equal protection of the laws; and the supremacy clause of Article VI of the Constitution of the United States, as in conflict with the provisions of an Act of Congress, the Rail Passenger Service Act of 1970, 45 U.S.C.A. Section 501 et seq., as amended, and the designation of a basic system of intercity rail passenger service by the Secretary of Tranportation pursuant to said Act.

Defendant Vern Miller is the Attorney General of Kansas; defendant E. V. D. Murphy is the director of Alcoholic Beverage Control of Kansas; defendant John Thomas Reid is County Attorney of Harvey County, Kansas, in which is located the City of Newton; and defendant Norman Walker is the Sheriff of Harvey County, Kansas.

The parties have entered into and filed a detailed stipulation of facts and have announced that there are no relevant facts which have not been stipulated. Under the Court's Order of October 10, 1972, briefs were to be filed simultaneously by the parties on or before November 15, 1972. On request of the parties, the Court granted requests for extension of time within which to file briefs on four separate occasions. The

last extension was granted on January 31, 1973, and extended the time to March 2, 1973. On February 28, 1973, the parties appeared before the Court again seeking further extension of time. On that occasion the Court directed that the briefs be filed not later than March 9, 1973, and that the matter proceed to trial. Trial took place at Topeka, Kansas on March 19, 1973, and the matter was taken under advisement by the Court.

The basic facts out of which the controversy arises are not in dispute.

Amtrak was created and organized to carry out the Rail Passenger Service Act of 1970 (45 U.S.C.A. 501 et seq.) and to provide rail passenger service prescribed by the Act and the Secretary of Transportation. In the exercise of its powers under the Act and the Report of the Secretary, Amtrak contracted with the Atchison, Topeka & Santa Fe Railway Company for the operation of trains in interstate commerce and the furnishing of services in connection with the operation of such trains as part of the system of rail passenger service designated by the Secretary to be provided by Amtrak. The Santa Fe operates in interstate commerce, pursuant to contract with the Corporation, passenger trains of the Corporation running between Chicago, Illinois, and Los Angeles, California, through the states of Illinois, Iowa, Missouri, Kansas, Colorado, New Mexico, Arizona and California, and between Chicago, Illinois, and Houston, Texas, through the states of Illinois, Iowa, Missouri, Kansas, Oklahoma and Texas, all of which trains are routed into and through the State of Kansas.

The scheduled stops of Amtrak trains in Kansas average two minutes in duration; passengers may board or depart the trains at such stops. No visitors are allowed on board trains during stops.

---

more than five hundred dollars ($500) . . . . ."

K.S.A. 1971 Supp. 41–2604
"Any person allowing consumption of alcoholic liquor in violation of this act on any property owned, leased or oth-

erwise under his control shall thereby subject himself and the property on which said illegal consumption takes place to the penalties hereinafter provided."

As part of the service to the passengers being transported by Amtrak, its trains contain lounge cars and dining cars wherein alcoholic liquor is available for purchase by passengers for consumption on the trains during their entire run, including the State of Kansas. All such trains are provisioned by Amtrak with supplies, including alcoholic liquor, for their runs from commissaries in Chicago, Illinois, the point of origin. Such alcoholic liquor is contained and sold to passengers in one-tenth pint bottles, and all such bottles of alcoholic liquor, when sold to passengers, are opened and the entire contents poured by lounge car attendants, who are instructed to retain the bottles. All alcoholic liquor sold on Amtrak trains is consumed on the trains. No tax was ever paid to the State on liquor dispensed by defendant's employees in Kansas, and no mark or stamp was on the package of liquor in defendant's possession.

On July 18, 1972, an Amtrak train left Chicago, Illinois, on its regular run to Los Angeles, California. Agents of defendant Vern Miller, Attorney General of Kansas, and defendant E. V. D. Murphy, Director of Alcoholic Beverage Control of the State of Kansas, boarded the train at Kansas City, Missouri, and rode in the lounge car to Newton, Kansas, where the train made a regularly scheduled stop, at which time defendant Vern Miller boarded the train, and he and said agents arrested the train conductor on criminal charges of violating K.S.A. 41–803, K.S.A. 41–407(1) and (2), K.S.A. 41–724, and K.S.A.1971 Supp. 41–2604. Also arrested was a lounge car attendant, on criminal charges of violating K.S.A. 41–901, K.S.A. 41–803 and K.S.A. 41–407(1) and (2), and a dining car waiter, on criminal charges of violating K.S.A. 41–901 and K.S.A. 41–803. The arrested train crew members were taken off the Amtrak train and arraigned in the County Court of Harvey County, Kansas. Pleas of not guilty were entered to all charges, and said persons were released upon bond.

In conjunction with said arrests, all containers of alcoholic liquor on board the train were seized, as were all books and records of the Corporation and the Santa Fe in regard to the inventory and sales of alcoholic liquor aboard the train during its run. The containers, books and records are in the custody of defendant Norman Walker, Sheriff of Harvey County, Kansas.

On July 25, 1972, defendant John Thomas Reid, County Attorney of Harvey County, Kansas, filed an Information in the District Court of Harvey County, Kansas, charging Amtrak with eight counts of violations of the Kansas Liquor Control Act and the Act commonly known as the Kansas "Private Club Law," allegedly occurring on July 17 and July 18, 1972. Amtrak is charged with violations of K.S.A. 41–803, K.S.A. 41–724, K.S.A. 41–407(1)(2), and K.S.A. 1971 Supp. 41–2604.

On July 18, 1972, Amtrak discontinued service of intoxicating liquor to passengers on its trains while passing through Kansas, pending the determination of this action and to avoid the accumulation of criminal penalties and continued charges against its trains and employees passing through the State of Kansas.

THE TWENTY–FIRST AMENDMENT

The resolution of the issues presented in the case depends principally on the force and effect to be given Section 2 of the Twenty-First Amendment to the United States Constitution.

The Twenty-First Amendment repealed the Eighteenth Amendment which had prohibited the importation of intoxicating liquor into or the exportation of it from the United States, and had granted the states concurrent power to enforce the Article by appropriate legislation.

Consideration must be given to the acts of Congress designed to subject interstate traffic of intoxicating liquors to the laws of the place where it was to be

received, possessed, sold, or in any manner used in violation of any law of a state. The Webb-Kenyon Act, enacted in 1913 and reenacted in 1935 (27 U.S. C.A. § 122), took away the protection of interstate commerce from all receipt and possession of liquor prohibited by state law. That the commerce clause of the Constitution prevented the enforcement of prohibitions prescribed by state laws was denied in the case of Clark Distilling Company v. Western Maryland Railway Company, 242 U.S. 311 at p. 325, 37 S.Ct. 180 at p. 185, 61 L.Ed. 326, when the Court in that case said:

> "The movement of liquor in interstate commerce and the receipt and possession and right to sell prohibited by the state law having been in express terms divested by the Webb-Kenyon Act of their interstate commerce character, it follows that if that act was within the power of Congress to adopt, there is no possible reason for holding that to enforce the prohibitions of the state law would conflict with the commerce clause of the Constitution . . . ."

That decision forcefully reminds us that because of the nature of intoxicating liquor, its regulation and prohibition has been upheld in numberless instances which are repugnant to the great guarantees of the Constitution but for the enlarged right possessed by the government to regulate liquor. The exceptional nature of the subject regulated is the basis upon which the exceptional power exerted rests and affords no ground for any complaint that power is not consistent with guarantees of the Constitution. That other articles of commerce may not be subject to the same restraints does not change the situation as it relates to intoxicating liquor (p. 332, 37 S.Ct. 180). And in McCormick & Co. v. Brown, 286 U.S. 131, 52 S.Ct. 522, 76 L. Ed. 1017 (1932), the Court succinctly

observed that there is no reason for denying to the Webb-Kenyon Act its intended application to prevent the immunity of transactions in interstate commerce from being used to impede the enforcement of the state's valid prohibitions. Cf. Seaboard Air Line Railway v. State of North Carolina, 245 U.S. 298, 38 S.Ct. 96, 62 L.Ed. 299.

Nor does the fact that such regulation or prohibition of intoxicants may impinge upon or affect the economic welfare of a business or industry furnish a basis for denying the right of the people, if they so elect, acting through popular government to control or outlaw the liquor traffic, violate any constitutional inhibition. Mugler v. Kansas, 123 U.S. 623, 657, 8 S.Ct. 273, 31 L.Ed. 205.

■ We are not considering a situation in which the movement of liquor is through the state as a mere incident to the transportation to another state. A state does not have the power to prohibit the transportation of liquors through its territory in interstate commerce but it can lawfully impose restrictions upon the interstate transporation of liquor through its borders by requiring the designation of definite routes of travel, bonds or permits.[3] Furthermore, when the liquor while in transit as an interstate shipment, is diverted in the state traversed to an unlawful purpose or use, the initial character of the shipment does not clothe those in possession with immunity from prescribed penalties or oust jurisdiction of state courts, either as to person or property.[4]

■ In all events, a state may protect her people from the evils incident to intoxicants and may exercise large discretion as to the means employed. And the efforts to exercise control in the public interest over the traffic in intoxicating liquor has been attended with difficulty

3. Carter v. Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605; Commonwealth of Pa. v. One Dodge Motortruck, 110 A.L.R. 919, and see Annotations at p. 940.

4. Carter v. Virginia, supra; State v. Hall, 224 N.C. 314, 30 S.E.2d 158.

due to its tendency to get out of bounds.[5]

■ Under the Twenty-First Amendment, a state has the right to legislate concerning intoxicants brought from without the State for use and sale therein, unfettered by the commerce clause. Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128. A state is totally unconfined by traditional commerce clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders. Seagram & Sons v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed. 2d 336 (1966); Hostetter v. Idlewild, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964).

While there is some contention that the decision in *Idlewild* has modified the application of Section 2 of the Twenty-First Amendment as superseding or overriding the commerce clause, it must be noted that in *Idlewild* the holding turned on the fact that the State of New York was undertaking to prevent transactions supervised by the Bureau of Customs involving intoxicants for delivery to consumers in foreign countries. In the later *Seagram* case, a unanimous court limited the application of *Idlewild*, 384 U.S. p. 41, 86 S.Ct. p. 1259:

"Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.' As this Court has consistently held, 'That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories.'

. . . Just two Terms ago we took occasion to reiterate that 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' . . . As the *Idlewild* case made clear, however, the second section of the Twenty-first Amendment has not operated totally to repeal the Commerce Clause in the area of the regulation of traffic in liquor. In *Idlewild* the ultimate delivery and use of the liquor was in a foreign country, and the Court held that under those circumstances New York could not forbid sales made under the explicit supervision of the United States Customs Bureau, pursuant to laws enacted by Congress under the Commerce Clause for the regulation of commerce with foreign nations.

. . . . . .

"Unlike *Idlewild*, the present case concerns liquor destined for use, distribution, or consumption in the State of New York. In that situation, the Twenty-first Amendment demands wide latitude for regulation by the State."

The State of Kansas has had a long history of constitutional and statutory prohibition. Perhaps no state has had more rigid laws. Repeal of prohibitory liquor laws came slowly to the State and then only after the people were given every assurance that liquor-by-the-drink would never be permitted in Kansas as evidenced by its constitutional provisions [6] and the Liquor Control Act adopted by the Legislature in 1949.

■ The laws of Kansas are specific and unambiguous. They express the attitudes of the Kansas people toward the use, sale and distribution of intoxicating

---

5. Duckworth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144.

6. Art. 15, Sec. 10, Kansas Constitution. "Intoxicating liquors. The legislature may provide liquors in certain areas.

Subject to the foregoing, the legislature may regulate, license and tax the manufacture and sale of intoxicating liquors, and may regulate the possession and transportation of intoxicating liquors. The open saloon shall be and is hereby forever prohibited."

liquor. That there exists a state interest in the sale and consumption of intoxicating liquor in the State cannot be denied.[7] The Kansas Constitution prohibits an "open saloon" which by legislative definition is *any place, public or private,* where liquor is sold or offered for sale by the drink or in any quantity of less than one-half pint. It also prohibits sales in any place in the State without having first obtained a license. The Kansas law also prohibits consumption of liquor on unlicensed premises and all places *of any kind* where liquors are sold or given away in violation of Kansas law is declared to be a common nuisance.

Under the stipulation of facts, it is established that plaintiff had no license from the Director of Alcoholic Beverage Control of Kansas to sell intoxicating liquor in the State on July 18, 1972. Nor does it appear that plaintiff paid any tax or ever undertook to apply for a license. Intoxicating liquor, loaded on plaintiff's train in Chicago, was served by the drink to persons on the train while it was in Kansas, contrary to Kansas law. The package from which the individual drink was served was contained in one-tenth pint bottles, which is less than one-half pint permitted by law. The train stopped at different stations in Kansas en route through the State. Persons were permitted to leave the train and to board it at these stops. These persons could and did buy intoxicating liquor from plaintiff's car attendants. Plaintiff did not have and did not seek a license which would permit liquor to be consumed in its cars. This again was a violation of Kansas law.

■ Under the language of Section 2 of the Twenty-First Amendment, as such provision is interpreted by the

United States Supreme Court in its application to state liquor laws, we are compelled to reach the conclusion that the plaintiff was and is subject to the laws of Kansas which control the importation and possession for delivery or use of liquor in the State.

## PREEMPTION BY FEDERAL LAW

Plaintiff urges that under the supremacy clause of the Constitution [8] the enforcement of the state statutes conflicts with the specific provision of the federal law authorizing the creation of the Rail Passenger Act. That Act contains a provision, 45 U.S.C. § 546(c), which states:

"The Corporation shall not be subject to any State or other law pertaining to the transportation of passengers by railroad as it relates to rates, routes, or service."

Plaintiff contends that under this authorization granted to plaintiff by Congress, the providing of liquor for passengers is a "service" to be afforded the people riding trains and that the federal statute preempts the state's right to regulate possession, use, or sale of liquor on trains operating under provisions of the Congressional Act.

■ First, it must be observed that plaintiff is not a government agency or establishment but is a private corporation operated for profit. The Act under which plaintiff was incorporated so provides.[9] Thus plaintiff's position is no different than that of any private corporation organized under federal law, e. g., banks organized under The National Bank Act, 12 U.S.C.A. § 21 et seq.

■ A national bank is subject to the laws of the state in which it is located in respect to its affairs if such laws do

---

7. Eberle v. Michigan, 232 U.S. 700, 707, 34 S.Ct. 464, 58 L.Ed. 803.

8. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and

the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

9. 45 U.S.C. § 541.
   "The Corporation will not be an agency or establishment of the United States Government.

not interfere with the purpose of its creation, tend to impair or destroy its efficiency as a federal agency, conflict with the paramount laws of the United States, or discriminate against such national bank. See 10 Am.Jur., Banks, § 15, p. 40.

But before a federal law may preempt state legislation, the federal statute must be free from constitutional infirmity. Constitutional amendments limit the power of Congress as well as that of the states when so considered. A construction of 45 U.S.C. § 546(c) which would forbid or prevent the enforcement of a state's regulatory liquor law under the guise of classifying the use and sale of liquor-by-the-drink as a "service," if so construed, would amount to a circumvention of the clear provisions of the second section of the Twenty-First Amendment. There is nothing in the legislative history of the amendment, nor in the enactment of the Rail Passenger Service Act, to justify such interpretation and such an effort, had it been attempted, would be a clear violation of the Twenty-First Amendment. A statute will not be given a broad construction if its validity can be saved by a narrower one. United States v. Walter, 263 U.S. 15, 44 S.Ct. 10, 68 L.Ed. 137. So here, the word "services" should not be construed to include the serving of intoxicating liquor within the boundaries of a state in violation of the state's regulatory act. Otherwise, that part of the Congressional Act would be unconstitutional.

Title 45 U.S.C. § 546(c), thus construed, is valid and does not preempt the enforcement of the Kansas Liquor Control Act.

### EXERCISE OF STATE POLICE POWER

We find no basis on which to hold that there has been an unreasonable exercise of police power by the people of Kansas acting through their duly elected legislative representatives. Under the Twenty-First Amendment, the people of Kansas could completely prohibit the use, sale, and possession of intoxicating liquor in the State. To interpret the Twenty-First Amendment otherwise is to ignore its plain and distinct language.

In the early case of Mugler v. Kansas, 123 U.S. 623, at p. 662, 8 S.Ct. 273, at p. 297, 31 L.Ed. 205 (1887), the Supreme Court said:

"If, therefore, a state deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medical, scientific, and mechanical purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation. Indeed, it is a fundamental principle in our institutions, indispensable to the preservation of public liberty, that one of the separate departments of government shall not usurp powers committed by the constitution to another department. And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the efforts to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question."

And, as to the application of the Fourteenth Amendment, in the same case it was pointed out, at p. 657, 8 S.Ct. at p. 295:

"The general question in each case is, whether the foregoing statutes of Kansas are in conflict with that clause of the fourteenth amendment, which provides that 'no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life,

liberty, or property, without due process of law.'

"That legislation by a state prohibiting the manufacture within her limits of intoxicating liquors, to be there sold or bartered for general use as a beverage, does not necessarily infringe any right, privilege, or immunity secured by the constitution of the United States, is made clear by the decisions of this court, rendered before and since the adoption of the fourteenth amendment; to some of which, in view of questions to be presently considered, it will be well to refer."

The right of the state to promote the common good, to regulate or prohibit the traffic in ardent spirits injurious to its citizens and calculated to produce idleness, vice and debauchery, cannot be questioned under the Fourteenth Amendment or any other provision of the Constitution. Legislation by a state, prohibiting or regulating the use of intoxicating liquors as a beverage infringes on no right, privilege or immunity secured by the Constitution, either before or after the adoption of the Fourteenth Amendment. *Mugler,* supra, p. 657, 8 S.Ct. 273.

The foregoing rules were approved in California v. LaRue, 409 U.S. 109, 93 S. Ct. 390, 34 L.Ed.2d 342, decided December 5, 1972, a case in which a three-judge court had held regulations of the Department of Alcoholic Beverage Control of California to be in conflict with the First and Fourteenth Amendments because it suspended the license of a nightclub licensee for entertaining with nude female entertainers in a manner contrary to the regulation.

In reversing the decision of the three-judge lower court, the Supreme Court again said:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals. In Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, 330, 84 S.Ct. 1293, 12 L.Ed. 2d 350 (1964), the Court reaffirmed that by reason of the Twenty-first Amendment 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' Still earlier, the Court stated in State Board v. Young's Market Co., 299 U.S. 59, 64, 57 S.Ct. 77, 81 L.Ed. 38 (1936):

" 'A classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth.' "

After carefully reviewing the authorities submitted we are obliged to determine that contrary to plaintiff's contentions, the Twenty-First Amendment does grant to the State the power to regulate and prohibit the possession, use, and sale of intoxicating liquors by plaintiff within the State of Kansas. We further determine that the Kansas laws, as enacted and applied to plaintiff cast no undue burden on interstate commerce. Nor does the Rail Passenger Service Act preempt the right and power of the State to regulate or prohibit the possession, use, or sale of intoxicating liquor on plaintiff's trains, operated as they are in Kansas, loading and unloading passengers at different points in Kansas. Furthermore, there can be no demand for uniformity of regulation where the subject involves the use and sale of intoxicating liquors. Plaintiff is not, as it contends, a federal instrumentality and the enforcement of the State Liquor Control Laws, as administered in this case, cannot be held to impair the efficiency of plaintiff in transporting passengers from place to place. The legislative enactment of the Kansas Legislature is clearly a valid exercise of police power under the facts and circumstances presented to us.

## JURISDICTION

Jurisdiction of this Court is claimed because it is alleged that the action arises under Article I, Section 8, Clause 3 of the Constitution (Regulation of Commerce), Article VI of the Constitution (Supremacy Clause), the Fourteenth Amendment, and an Act of Congress, The Railroad Passenger Service Act, 45 U.S.C. § 501 et seq., as amended. It is also alleged that the matter in controversy exceeds the sum of $10,000.00. Plaintiff requested that a statutory court of three judges be convened pursuant to 28 U.S.C. § 2284, for the purpose of hearing and disposing of the cause.

The Court initially entertained some doubts that the action fell within the class of cases described in 28 U.S.C. § 2284 and issued a show cause order directing defendants to appear and show cause why notice should not be given to the Chief Judge of the Circuit to convene a three-judge court for the purpose of hearing the case and determining the issues involved.

Following an evidentiary hearing, the Court determined that defendants had in fact caused the arrest of plaintiff's employees for the alleged violations in Kansas of the state statutes relating to the use, possession, and sale of intoxicating liquor and in addition had seized all containers of alcoholic liquor aboard plaintiff's train, part of the provisions of the train for its entire run, and all books and records of plaintiff in regard to the inventory and sales of alcoholic liquor aboard the train during its run, which were placed in the custody of the Sheriff, Norman Walker, one of the defendants.

After considering the issues involved and upon studying the opinions in the cases of Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L. Ed.2d 794; Idlewild v. Rohan, 2 Cir., 289 F.2d 426; and Idlewild v. Rohan, D.C., 188 F.Supp. 434, and other controlling decisions, the judge to whom this case was first referred concluded that a substantial federal question existed and that a substantial constitutional challenge to state activity had been made and that the relief sought by plaintiff was properly issuable only by a Three-Judge District Court. Following notice to the Chief Judge of the Circuit, a Three-Judge Court was convened to hear and determine the matter.

When this cause came on for trial before the Three-Judge Court the parties presented a stipulation of facts (Doc. 17), which they had prepared and filed October 26, 1972, and informed the Court that no other facts were deemed material except that just before the trial all criminal charges pending against plaintiff and its employees had been dismissed by direction of defendants.

The reason for this maneuver was not made clear though the dismissals apparently followed some understanding between the adverse parties. Of course, the parties must realize that they may not by any agreement on their part impose jurisdiction on the Court when issues become moot, and were it not for the fact that Sheriff Walker continues to hold the plaintiff's books, records, and liquor seized at the time of the now dismissed arrests and charges, a serious question of jurisdiction might exist. After again considering the issues, we conclude that there remains before us a substantial controversy involving the seized and detained property of plaintiff that calls for consideration and determination of a Three-Judge Court.

The Court must therefore deny plaintiff's prayer for an injunction and dismiss the action at plaintiff's costs.

It is so ordered.