**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

US AIRWAYS, INC.,

       Plaintiff-Appellant,

v.

KELLY O'DONNELL, in her official capacity as Superintendent of the New Mexico Regulation and Licensing Department; GARY TOMADA, in his official capacity as Director, New Mexico Regulation and Licensing Department, Alcohol & Gaming Division,

       Defendants-Appellees.

_____

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.; UNITED STATES OF AMERICA; ALAN S. BOYD; WILLIAM T. COLEMAN, JR.; ELIZABETH H. DOLE; JAMES H. BURNLEY, IV; SAMUEL K. SKINNER; ANDREW H. CARD, JR; FEDERICO F. PENA; RODNEY E. SLATER; NORMAN Y. MINETTA; MARY E. PETERS; ASSOCIATION OF FLIGHT ATTENDANTS - CWA; AMERICAN BEVERAGE LICENSEES; MOTHERS AGAINST DRUNK DRIVING; WINE & SPIRITS WHOLESALERS OF AMERICA, INC.; SAZERAC COMPANY; STATE OF INDIANA; STATE OF COLORADO; STATE OF FLORIDA; STATE OF IDAHO; STATE OF LOUISIANA; STATE OF

No. 09-2271

MARYLAND; STATE OF MICHIGAN; STATE OF MISSISSIPPI; STATE OF OHIO; STATE OF TENNESSEE; STATE OF TEXAS; STATE OF UTAH; STATE OF WYOMING;

Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:07-CV-01235-MCA-LFG)**

---

Seth P. Waxman, of Wilmer, Cutler, Pickering, Hale and Dorr, LLP, Washington, D.C., (Edward C. DuMont, Daniel S. Volchok of Wilmer, Cutler, Pickering, Hale and Dorr, LLP, Washington, D.C.; Howard Kass, Michael J. Minerva, US Airways, Inc., Washington, D.C., with him on the briefs), for Plaintiff-Appellant.

Joseph Goldberg, of Freedman, Boyd, Hollander, Goldberg, Ives & Duncan, P.A., Albuquerque, New Mexico, (John W. Boyd, Michael L. Goldberg, Molly Schmidt-Nowara of Freedman, Boyd, Hollander, Goldberg, Ives & Duncan, P.A., Albuquerque, New Mexico; Julie Ann Meade, New Mexico Regulation and Licensing Department, Santa Fe, New Mexico, with him on the brief), for Defendants-Appellees.

Mark R. Freeman, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., (Tony West, Assistant Attorney General; Greg Fouratt, United States Attorney; Mark B. Stern, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C.; Robert S. Rivkin, General Counsel, of Counsel; Paul M. Geier, Assistant General Counsel for Litigation, of Counsel; Paul S. Smith, Senior Trial Counsel, United States Department of Transportation, of Counsel; Richard H. Saltsman, Assistant Chief Counsel for Litigation, Federal Aviation Administration, of Counsel, with him on the brief), for Amici Curiae, United States of America.

David A. Berg, Air Transport Association of America, Inc., Washington, D.C.; Kenneth W. Starr, Tracy K. Genesen of Kirkland & Ellis, LLP, San Francisco, California; Jeffrey Bossert Clark, Jeffrey A. Rosen, P.C., Robert R. Gasaway, Michael A. Petrino of Kirkland & Ellis, LLP, Washington, D.C., filed an amicus brief for the Air Transport Association of America, Inc.

Paul D. Clement, Daryl L. Joseffer of King & Spalding, LLP, Washington, D.C., filed an amicus brief for Ten Former Secretaries of the Department of Transportation.

Edward J. Gilmartin, General Counsel, Association of Flight Attendants - CWA, Washington, D.C., filed an amicus brief for the Association of Flight Attendants - CWA.

Anthony S. Kogut of Willingham & Coté, P.C., East Lansing, Michigan, filed an amicus brief for the American Beverage Licensees.

Leslie Patterson Moore, General Counsel, Mothers Against Drunk Driving 511, Irving, Texas, filed an amicus brief for the Mothers Against Drunk Driving.

Craig Wolf, Joanne Moak, Karin F. R. Moore, Wine & Spirits Wholesalers of America, Inc., Washington, D.C.; Carter G. Phillips, Jacqueline G. Cooper of Sidley Austin, LLP, Washington, D.C., filed an amicus brief for the Wine & Spirits Wholesalers of America, Inc. and Sazerac Company.

Gregory F. Zoeller, Attorney General of Indiana, Thomas M. Fisher, Solicitor General, Heather L. Hagan, Deputy Attorney General, Office of the Attorney General, Indianapolis, Indiana; John W. Suthers, Attorney General of Colorado, Denver, Colorado; Bill McCollum, Attorney General of Florida, Tallahassee, Florida; Lawrence G. Wasden, Attorney General of Idaho, Boise, Idaho; James D. "Buddy" Caldwell, Attorney General of Louisiana, Baton Rouge, Louisiana; Douglas F. Gansler, Attorney General of Maryland, Baltimore, Maryland; Michael A. Cox, Attorney General of Michigan, Lansing, Michigan; Jim Hood, Attorney General of Mississippi, Jackson, Mississippi; Richard Cordray, Attorney General of Ohio, Columbus, Ohio; Robert E. Cooper, Jr., Attorney General of Tennessee, Nashville, Tennessee; Greg Abbott, Attorney General of Texas, Austin, Texas; Mark L. Shurtleff, Attorney General of Utah, Salt Lake City, Utah; Bruce A. Salzburg, Attorney General of Wyoming, Cheyenne, Wyoming, filed an amicus brief for the States of Indiana, Colorado, Florida, Idaho, Louisiana, Maryland, Michigan, Mississippi, Ohio, Tennessee, Texas, Utah and Wyoming.

Before **BRISCOE,** Chief Judge, **LUCERO,** and **HOLMES**, Circuit Judges.

**BRISCOE**, Chief Judge.

Plaintiff-Appellant US Airways, Inc. ("US Airways") filed this action in the United States District Court for the District of New Mexico seeking to enjoin Defendants-Appellees New Mexico state officials ("New Mexico") from regulating, pursuant to the New Mexico Liquor Control Act ("NMLCA"), N.M. Stat. § 60-3A-1 et seq., the alcoholic beverage service that airlines provide to passengers on flights. The district court concluded that federal law does not preempt the NMLCA and granted summary judgment for New Mexico. US Airways appeals that decision.

On appeal, US Airways argues that the Airline Deregulation Act of 1978 ("ADA") expressly preempts state regulation of airlines' alcoholic beverage services provided to passengers. In addition to express preemption, US Airways argues that federal law impliedly preempts the application of the NMLCA to US Airways. Specifically, US Airways contends that the Federal Aviation Act of 1958 ("FAA") and the federal regulations promulgated pursuant to the FAA occupy the field of aviation safety to the exclusion of state regulation and that NMLCA's application to an airline implicates the field of aviation safety. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that New Mexico's regulatory scheme is impliedly preempted as it falls within the field of aviation safety that Congress intended federal law to occupy exclusively, but that the Twenty-first Amendment of the United States Constitution requires a balancing of New Mexico's core powers and the federal interests underlying the FAA. Accordingly, we reverse and remand for the district court to conduct a Twenty-first Amendment balancing.

4

# I.

## A.

NMLCA regulates the sale, service and public consumption of alcoholic beverages in the State of New Mexico. See N.M. Stat. § 60-3A-1 et seq. NMLCA states, in relevant part, that "[e]very person selling alcoholic beverages to travelers on . . . airplanes within the state shall secure a public service license." N.M. Stat. § 60-6A-9. Further, NMLCA prohibits any person from being "employed as a server on a licensed premises unless that person obtains within thirty days of employment alcohol server training pursuant to the provisions of [N.M. Stat. § 60-6E-1 et seq.]." N.M. Stat. § 60-6E-4.

## B.

US Airways, an interstate airline carrier regulated by the Federal Aviation Administration of the United States Department of Transportation, operates flights that travel to and from the State of New Mexico at the Albuquerque International Sunport Airport. See Aplt. App. at A325, A1015. These flights generally originate from or arrive at locations outside New Mexico. See id. at A329, A1015.

US Airways serves alcoholic beverages during its flights, including those that arrive in and depart from New Mexico. Id. at A1015. However, passengers are not permitted to remove from the aircraft the alcoholic beverages served during flight. Id. at A1231. Further, the US Airways beverage carts containing the alcoholic beverages are not removed from the aircraft in New Mexico. Id. at A330–31, A1231–32. US Airways does not stock its aircraft with alcoholic beverages and does not purchase or store such

5

beverages in New Mexico.  Id. at A330.  Prior to 2007, US Airways provided alcoholic beverage service to passengers on flights departing from and arriving in New Mexico without possessing a public service license as required by NMLCA.  See id. at A1016, A1231.

## C.

In November 2006, Dana Papst was a passenger on a US Airways flight departing from Phoenix, Arizona and arriving in Albuquerque, New Mexico.  Id. at A1016.  He allegedly purchased and consumed alcoholic beverages during his US Airways flight.  See id. at A1017.  During his drive home from the Albuquerque airport and approximately three hours after deplaning, he caused an automobile accident that resulted in his death and the death of five others.  Id. at A589, A1232.  An analysis of Papst's blood drawn after the accident revealed that Papst's blood alcohol content was approximately 0.329.  See id. at A1232.  After conducting an investigation of the incident, the Federal Aviation Administration declined to take any action against US Airways or its employees.  Id. at A32, A1233.

In January 2007, the Alcohol and Gaming Division ("AGD") of the New Mexico Regulation and Licensing Department served US Airways with a citation asserting that US Airways had served alcohol to an intoxicated person, namely Dana Papst.  Id. at A33. The AGD also served US Airways with a cease-and-desist order directing US Airways to "refrain from selling, serving and otherwise dispensing, storing or possessing alcoholic beverages of any kind in the State of New Mexico" without properly complying with the

6

requirements of NMLCA. Id. at A35–38.

In February 2007, while noting its belief that federal law preempted the application of NMLCA to an airline, US Airways applied for a public service license to serve alcoholic beverages to passengers on aircraft in New Mexico. Id. at A43. In response to the application, AGD issued US Airways a ninety-day temporary license. See id. at A51. However, in June 2007, AGD declined to extend US Airways' temporary license explaining that US Airways' alcohol server training did not comply with NMLCA's requirements. Id. at A86–88. AGD ultimately rejected US Airways' application for a license in November 2007 citing as reasons for the denial the Dana Papst incident and another incident which involved a passenger who had been served alcoholic beverages on a US Airways flight and was apprehended for driving while intoxicated approximately an hour after he had deplaned at Albuquerque. Id. at A404–05.

**D.**

US Airways filed this action seeking to "enjoin New Mexico state officials [in the AGD and the New Mexico Regulation and Licensing Department] from enforcing laws that purport to govern US Airways' alcoholic beverage service on flights departing from or arriving into New Mexico." Id. at A6 (Compl. at 1). US Airways asserted both express and implied preemption in support of its request for injunction. Id. at A6–9 (Compl. at 1–4). Specifically, US Airways argued that the enforcement of NMLCA against an airline violated the Supremacy Clause of the United States Constitution as the ADA expressly preempts state regulation of airline services, including the alcoholic

7

beverage service provided to passengers on flights. Id. Alternatively, US Airways contended that federal law impliedly preempts the application of NMLCA to airlines as the application of NMLCA to an airline implicates the field of aviation safety, which federal law regulates to the exclusion of state regulation. Id. Further, US Airways asserted that New Mexico's regulatory efforts could not be otherwise authorized pursuant to the Twenty-first Amendment to the United States Constitution. Id.

The parties filed cross-motions for summary judgment. See id. at A1265 (Op. at 1). The district court concluded that federal law neither expressly nor impliedly preempts New Mexico's regulation of the alcoholic beverage service that airlines provide. Id. at A1287 (Op. at 23). Specifically, the district court narrowly construed the explicit preemption provision in the ADA, concluding that the provision's reference to "service" did not include an airline's alcoholic beverage service. See id. at A1283 (Op. at 19). The district court reasoned that the narrow interpretation necessarily avoided rendering the ADA preemption provision violative of § 2 of the Twenty-first Amendment. See id. at A1275 (Op. at 11). Further, the district court addressed field preemption and concluded that federal law did not preempt the field of alcohol service on airlines. Id. at A1287 (Op. at 23). In reaching this decision, the district court reasoned that, when enacting the FAA, "Congress was addressing the need for exclusive and complete rules for the physical and mechanical operation of aircraft." Id. at A1285 (Op. at 21). The district court then denied US Airways' motion for summary judgment and granted New Mexico's motion. Id. at A1287 (Op. at 23).

8

**II.**

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court." Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007). "Cross motions for summary judgment are . . . treated separately; the denial of one does not require the grant of another." Id. (internal quotation marks omitted). In this case, we review the grant of summary judgment to New Mexico. Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

On appeal, US Airways reasserts its contention that federal law both expressly and impliedly preempts NMLCA's regulation of an airline's alcoholic beverage service provided on aircraft. Aplt. Br. at 1. Further, US Airways argues that New Mexico cannot avoid the preemption of NMLCA's application to an airline's alcoholic beverage service by applying the Twenty-first Amendment. Id.

**A. Preemption**

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this provision, Congress has the power to enact statutes that preempt state law. Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan., 489 U.S. 493, 509 (1989). Thus, preemption is ultimately a question of congressional intent. See Altria Grp., Inc. v. Good, 129 S. Ct.

9

538, 543 (2008) (recognizing that "the purpose of Congress is the ultimate touchstone in every pre-emption case" (internal quotation marks and brackets omitted)). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." Id.

There are three types of preemption: 1) "express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law;" 2) "field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it;" and 3) "conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 486 (10th Cir. 1998). In this case, US Airways asserts that federal law expressly preempts NMLCA's application to an airline. Additionally, US Airways asserts that the FAA, 49 U.S.C. § 40101 et seq., and the federal regulations promulgated pursuant to the FAA occupy the field of aviation safety to the exclusion of state regulation, including the NMLCA. Because we conclude that applying New Mexico's regulatory scheme to US Airways implicates the field of aviation safety that Congress intended federal law to regulate exclusively, we need not reach the question of express preemption.

## 1.

Field preemption occurs when a "state law . . . regulates conduct in a field that

10

Congress intended the Federal Government to occupy exclusively." English v. Gen. Elec. Co., 496 U.S. 72, 78–79 (1990). Congress's intent for federal law to occupy a field exclusively "may be inferred from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Id. at 79 (internal quotation marks, brackets and ellipses omitted).

When conducting a field preemption analysis, we must first identify the legislative field that the state law at issue implicates. See Martin ex rel. Heckman v. Midwest Express Holdings, Inc., 555 F.3d 806, 809 (9th Cir. 2009) (explaining that "the circuits have generally analyzed FAA preemption by looking to the pervasiveness of federal regulations in the specific area covered by the . . . state law at issue"). In this case, the district court narrowly construed NMLCA as regulating the field of alcoholic beverage service provided on airplanes. Aplt. App. at A1287 (Op. at 23). In our view, however, the regulation of an airline's alcoholic beverage service necessarily implicates the field of airline safety. The FAA similarly recognized the safety considerations implicated when promulgating 14 C.F.R. § 121.575 to regulate the alcoholic beverage services provided on airplanes. See Drinking and Serving of Alcoholic Beverages, 25 Fed. Reg. 168, 168–69 (Jan. 9, 1960) (discussing the safety concerns associated with an airline's alcoholic beverage service).

Additionally, NMLCA's regulatory scheme extends beyond the field of airline

11

alcoholic beverage services.  Specifically, NMLCA prescribes training and certification requirements for flight attendants and other airline crew members serving alcoholic beverages on aircraft.  See N.M. Stat. § 60-6E-4 ("No person shall be employed as a server on a licensed premises unless that person obtains within thirty days of employment alcohol server training pursuant to the provisions of [N.M. Stat. § 60-6E-1 et seq.].");  N.M. Stat. § 60-6E-5(B) (delineating the subjects that the training program for employees serving alcoholic beverages must cover).  Thus, we conclude that New Mexico's regulatory scheme as applied to an airline generally implicates the field of aviation safety.

## 2.

Having identified the legislative field at issue, we must next evaluate whether Congress intended to occupy the field to the exclusion of the states.  See Martin ex rel. Heckman, 555 F.3d at 808 ("To find field preemption here, we must infer that Congress intended to exclude all state law . . . from [this] area . . . even though it didn't say so.").  Thus, in this case, we must determine whether Congress intended to occupy the field of aviation safety to the exclusion of the states.  While recognizing that the purpose of Congress must be clear as we presume that "Congress does not cavalierly pre-empt state-law causes of action," Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), the field of aviation safety "has long been dominated by federal interests."  Montalvo v. Spirit Airlines, 508 F.3d 464, 471 (9th Cir. 2007).  Thus, the presumption against preemption does not apply in this case.  See Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 347–48 (2001) (explaining that the presumption against preemption did not apply because

the field at issue was "hardly a field which the States have traditionally occupied" (internal quotation marks omitted)).

While we have previously held that Congress did not indicate "'a clear and manifest' intent to occupy the field of airplane safety to the exclusion of state common law," Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1443–44 (10th Cir. 1993), our prior holding addressed only the preemption of state tort remedies. See id. In Cleveland, our analysis relied in part on the FAA statutory savings clause, which "leaves in place remedies then existing at common law or by statute." Id. at 1442–43. Further, in Cleveland, we recognized the possibility that "Congress may reserve for the federal government the exclusive right to regulate safety in a given field, yet permit the states to maintain tort remedies covering much the same territory." Id. at 1441 (emphases added). In contrast to Cleveland, NMLCA does not involve state tort remedies and instead imposes substantive requirements.

Further, we have recognized that our analysis in Cleveland has been called into question based on subsequent Supreme Court opinions. See Choate v. Champion Home Builders Co., 222 F.3d 788, 794 n.8 (10th Cir. 2000). Specifically, our holding in Cleveland relied, in significant part, on the premise that "implied preemption is generally inapplicable to a federal statute that contains an express preemption provision." Cleveland, 985 F.2d at 1443. However, the Supreme Court appears to have rejected this reasoning. See Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 873 (2000) ("[T]he express pre-emption provision imposes no unusual, 'special burden' against [implied]

13

pre-emption."); see also Choate, 222 F.3d at 794 n.8. Thus, we conclude that Cleveland does not dictate the outcome in this case, and we must address whether Congress intended to occupy the field of aviation safety to the exclusion of state regulation.

Based on the FAA's purpose to centralize aviation safety regulation and the comprehensive regulatory scheme promulgated pursuant to the FAA, we conclude that federal regulation occupies the field of aviation safety to the exclusion of state regulations. The FAA was enacted to create a "uniform and exclusive system of federal regulation" in the field of air safety. City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 639 (1973). Specifically, Congress enacted the FAA in response to a series of "fatal air crashes between civil and military aircraft operating under separate flight rules." H.R. Rep. No. 85-2360, at 2 (1958), reprinted in 1958 U.S.C.C.A.N. 3741, 3742 (noting that "[t]he magnitude and critical nature of [airspace use and air-safety problems] came . . . to general public notice . . . as a result of" a series of airplane crashes). In response to the air safety concerns, the House Report discussing the FAA indicated that the "Administrator of the new Federal Aviation Agency . . . would be given full responsibility and authority for the . . . promulgation and enforcement of safety regulations . . . ." H.R. Rep. No. 85-2360, at 1 (1958), reprinted in 1958 U.S.C.C.A.N. 3741, 3741. Further, as documented in the House Report, a letter from a representative of the Executive Branch to the House Committee on International and Foreign Commerce explained that "[i]t is essential that one agency of government, and one agency alone, be responsible for issuing safety regulations." H.R. Rep. 85-2360, at 20 (1958), reprinted in

14

1958 U.S.C.C.A.N. 3741, 3761.

The language of the FAA explicitly directs the Administrator of the Federal Aviation Administration to promulgate regulations for the "safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a). Beyond the types of regulations specifically enumerated, the FAA directs the Administrator to regulate any "other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." Id. The Federal Aviation Administration has exercised its authority pursuant to the FAA to promulgate regulations addressing "virtually all areas of air safety." Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 224 (2d Cir. 2008); see, e.g., 14 C.F.R. § 91.13(a) (identifying the general standard of care for operating an aircraft); 14 C.F.R. § 121.571 (specifying the mandatory briefings that must be provided to all passengers on aircraft); 14 C.F.R. pt. 121, app. A (identifying the minimum number of first-aid kits that must be stored on aircraft and the items that each first-aid kit must contain). Significantly, as relevant to the present case, the Federal Aviation Administration has promulgated a regulation pursuant to the FAA specifically addressing airlines' alcoholic beverage services. See 14 C.F.R. § 121.575. We conclude that the comprehensive regulatory scheme promulgated pursuant to the FAA evidences the intent for federal law to occupy the field of aviation safety exclusively. See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153–154 (1982) ("Federal regulations have no less preemptive effect than statutes.").

Other circuits have similarly concluded that Congress intended federal law to

15

occupy the entire field of aviation safety exclusively. See Montalvo, 508 F.3d at 473

("We . . . hold that federal law occupies the entire field of aviation safety. Congress'

intent to displace state law is implicit in the pervasiveness of the federal regulations, the

dominance of the federal interest in this area, and the legislative goal of establishing a

single, uniform system of control over air safety."); see also Cuomo, 520 F.3d at 224–25

(suggesting in dicta that the state law at issue "may also be impliedly preempted by the

FAA and regulations promulgated thereunder"); Greene v. B.F. Goodrich Avionics Sys.,

Inc., 409 F.3d 784, 795 (6th Cir. 2005) ("We agree . . . that federal law establishes the

standards of care in the field of aviation safety and thus preempts the field from state

regulation."); Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 367 (3d Cir. 1999) ("[W]e

hold that federal law establishes the applicable standards of care in the field of air safety,

generally, thus preempting the entire field from state and territorial regulation.").[1]

**3.**

Having addressed the field of aviation safety generally, we must consider whether

the NMLCA implicates the field as occupied by federal law. Even if we narrowly define

the field of aviation safety, we conclude that NMLCA's regulation of an airline's

---

[1] However, while concluding that federal regulation occupies the field of aviation safety to the exclusion of state regulation, some circuits have narrowed the field of air safety. See Elassaad v. Independence Air, Inc., 613 F.3d 119, 121 (3d Cir. 2010) (holding "that the 'field of aviation safety' does not include a flight crew's oversight of the disembarkation of passengers once a plane has come to a complete stop at its destination"); see also Martin ex rel. Heckman, 555 F.3d at 812 (explaining that a design defect claim related to airstairs was not preempted "[b]ecause the agency has not comprehensively regulated airstairs").

16

alcoholic beverage service directly implicates the field of aviation safety regulated by federal law. As noted, the Federal Aviation Administration has promulgated a federal regulation specifically addressing airlines' alcoholic beverage services. See 14 C.F.R. § 121.575.[2] Notably, the Federal Aviation Administration promulgated this regulation to promote aviation safety. See Drinking and Serving of Alcoholic Beverages, 25 Fed. Reg. 168, 168–69 (Jan. 9, 1960) ("The Agency's responsibility is only for the air safety considerations and not for the social or moral aspects" of alcohol consumption.). Specifically, the Federal Aviation Administration balanced the safety concerns inherent in regulating airline alcoholic beverage service against the imposition of additional responsibilities on flight crew members. See id. (explaining that airline flight crew

---

[2]Section 121.575 provides in full:

(a) No person may drink any alcoholic beverage aboard an aircraft unless the certificate holder operating the aircraft has served that beverage to him.

(b) No certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who—

> (1) Appears to be intoxicated;
> (2) Is escorting a person or being escorted . . . ; or
> (3) Has a deadly or dangerous weapon accessible to him while aboard the aircraft . . . .

(c) No certificate holder may allow any person to board any of its aircraft if that person appears to be intoxicated.

(d) Each certificate holder shall, within five days after the incident, report to the Administrator the refusal of any person to comply with paragraph (a) of this section, or of any disturbance caused by a person who appears to be intoxicated aboard any of its aircraft.

17

members would not have the responsibility to "restrain physically a passenger who wished to consume drinks that were not served to him by the carrier"). Additionally, the Federal Aviation Administration considered whether the proposed provision adequately addressed safety concerns, noting that "flat prohibition [of alcohol on aircraft] has not proven successful" and "it might even work adversely, since passengers who wish to drink might . . . do so to excess in advance of the flight, knowing that they could not obtain a drink aboard an aircraft." Id. at 170. Thus, NMLCA implicates the field of aviation safety as occupied by federal law.

Further, New Mexico's regulatory efforts extend beyond the alcoholic beverage service that airlines provide on flights. By requiring airlines to comply with NMLCA, New Mexico is seeking to impose additional training requirements on flight attendants and crew members serving alcoholic beverages on airplanes. See N.M. Stat. § 60-6E-4 ("No person shall be employed as a server on a licensed premises unless that person obtains within thirty days of employment alcohol server training pursuant to the provisions of [N.M. Stat. § 60-6E-1 et seq.]."); N.M. Stat. § 60-6E-5(B) (delineating the subjects that the training program for employees serving alcoholic beverages must cover). In fact, when New Mexico denied the renewal of US Airways' temporary public service license, New Mexico noted that US Airways "ha[d] done little if anything to consider implementing applicable portions of [New Mexico's] required alcohol server training." Aplt. App. at A87. However, federal law extensively regulates flight attendant and crew member training programs and certification requirements due to the aviation safety

18

considerations involved. See 49 U.S.C. § 44728(a)(1) ("No person may serve as a flight attendant aboard an aircraft of an air carrier unless that person holds a certificate of demonstrated proficiency from the Administrator of the Federal Aviation Administration. . . ."); 14 C.F.R. §§ 121.404 (requiring that flight attendants and aircraft dispatchers "complete[] approved crew resource management . . . or dispatcher resource management . . . initial training"), 121.405 (explaining the approval process for training programs or revisions to existing training programs), 121.415 (delineating the training program requirements), 121.421 (describing the initial and transition ground training requirements for flight attendants), 121.427 (explaining the recurrent training requirements for crew members and dispatchers), 121.433 (describing the mandatory crew member training requirements). Thus, NMLCA's regulatory scheme implicates the field occupied by federal law.

Based on the pervasive federal regulations concerning flight attendant and crew member training and the aviation safety concerns involved when regulating an airline's alcoholic beverage service, we conclude that NMLCA's application to an airline implicates the field of airline safety that Congress intended federal law to regulate exclusively. Thus, New Mexico's regulatory efforts are impliedly preempted.

**B. Twenty-first Amendment**

While we conclude that federal law preempts NMLCA's regulation of the alcoholic beverage service on aircraft, our analysis does not end there. We must next evaluate whether § 2 of the Twenty-first Amendment permits New Mexico's regulatory

19

scheme, as applied to an airline's alcoholic beverage service, to override federal policy.

See Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698 (1984). In this regard, the

Twenty-first Amendment requires a balancing of New Mexico's core powers and the

federal interests underlying the FAA. See id. at 712–14. As the district court concluded

that federal law does not preempt the NMLCA, the district court did not conduct a

balancing of state and federal interests. As this is a fact-intensive inquiry, we remand to

the district court to conduct this balancing in the first instance.

**1.**

Section 2 of the Twenty-first Amendment provides: "The transportation or

importation into any State, . . . for delivery or use therein of intoxicating liquors, in

violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

"Notwithstanding the [Twenty-first] Amendment's broad grant of power to the States, . . .

the Federal Government plainly retains authority under the Commerce Clause to regulate

even interstate commerce in liquor." Crisp, 467 U.S. at 713.

The Supreme Court has recognized that "there is no bright line between federal

and state powers over liquor." Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum,

Inc., 445 U.S. 97, 110 (1980). Instead, "[b]oth the Twenty-first Amendment and the

Commerce Clause are parts of the same Constitution. Like other provisions of the

Constitution, each must be considered in light of the other, and in the context of the issues

and interests at stake in any concrete case." Id. at 109 (internal quotation marks omitted).

When resolving conflicts between different provisions of the Constitution, courts must

20

undertake a "pragmatic effort to harmonize state and federal powers." Id. Thus, as Congress enacted the FAA pursuant to the Commerce Clause, the state interests protected under the Twenty-first Amendment must be balanced against the federal interests.

New Mexico contends that Twenty-first Amendment balancing is inapplicable in this case. Specifically, New Mexico argues that cases "involving core powers of licensing do not require balancing under the Twenty-first Amendment." Aplee. Br. at 41. While NMLCA represents an exercise of a state's core powers reserved by the Twenty-first Amendment, see Crisp, 467 U.S. at 715 (describing core powers as "control over whether to permit importation or sale of liquor and how to structure the liquor distribution system" (internal quotation marks omitted)), New Mexico relies on a flawed reading of Crisp to reach the conclusion that a balancing is unnecessary in this case. In Crisp, the Supreme Court held that when "a state regulation squarely conflicts with the accomplishment and execution of the full purposes of federal law, and the State's central power under the Twenty-first Amendment . . . is not directly implicated, the balance between state and federal power tips decisively in favor of the federal law." Id. at 716. Nonetheless, this does not dictate the conclusion that when a state exercises a core power, the balance will decisively tip in favor of the state.

In fact, in North Dakota v. United States, the state regulations at issue "f[e]ll within the core of the State's power under the Twenty-first Amendment." 495 U.S. 423, 432 (1990) (plurality opinion). Rather than simply adopting a bright line rule immunizing core Twenty-first Amendment powers from federal regulation, the plurality suggested

21

that a state exercising its Twenty-first Amendment power may violate the Supremacy Clause when state regulation conflicts with federal law. See id. at 439–40 (plurality opinion) (explaining that "when the Court is asked to set aside a regulation at the core of the State's powers under the Twenty-first Amendment . . . it must proceed with particular care" (internal citation omitted)). Thus, even though NMLCA represents the exercise of a core state power pursuant to the Twenty-first Amendment, a balancing of state and federal interests must be conducted.

New Mexico also contends that the Twenty-first Amendment analysis is controlled by National Railroad Passenger Corp. v. Miller, 358 F. Supp. 1321 (D. Kan. 1973), aff'd without op. 414 U.S. 948 (1973). We disagree. First, we question whether Miller is controlling precedent. Specifically, Miller was decided by a three-judge panel and was summarily affirmed by the Supreme Court without opinion. Id. When the Supreme Court summarily affirms without opinion, it "affirm[s] the judgment but not necessarily the reasoning by which it was reached." Mandel v. Bradley, 432 U.S. 173, 176 (1977) (per curiam) (internal quotation marks omitted). A summary affirmance without opinion "prevent[s] lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." Id. In Miller, a three-judge panel concluded that a federal statute did not expressly preempt state liquor laws regulating Amtrak's liquor sales to passengers. See 358 F. Supp. at 1329. However, as Miller did not address the issue of field preemption, Miller does not speak to the precise issue presented in this case.

22

Further, the Twenty-first Amendment analysis in <u>Miller</u> is inconsistent with more recent Supreme Court decisions. Specifically, the <u>Miller</u> court reasoned that "a state has the right to legislate concerning intoxicants brought from without the State for use and sale therein, unfettered by the commerce clause." <u>Id.</u> at 1327. However, the Supreme Court has subsequently stated that "there is no bright line between federal and state powers over liquor," endorsing the use of a balancing of the state and federal interests involved. <u>Midcal</u>, 445 U.S. at 110.

## 2.

While we defer to the district court to conduct the balancing of state and federal interests in the first instance, we offer some guidance for this analysis. The key inquiry in balancing state and federal interests is "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." <u>Crisp</u>, 467 U.S. at 714.

In conducting this balancing, the court should be guided by the following three-step framework:

> First, the court should examine the expressed state interest and the closeness of that interest to those protected by the Twenty-first Amendment. . . . Second, the court should examine whether, and to what extent, the regulatory scheme serves its stated purpose . . . . Simply put, is the scheme effective? . . . [T]he answer to this question may ultimately rest upon findings and conclusions having a large factual component. Finally, the court should balance the state's interest . . . (to the extent that interest is actually furthered by the regulatory scheme) against the federal interest . . . .

23

TFWS, Inc. v. Schaefer, 242 F.3d 198, 213 (4th Cir. 2001) (internal citation and quotation marks omitted).

In this case, the district court never conducted any balancing of state and federal interests. Thus, the district court did not have the opportunity to evaluate the effectiveness of New Mexico's regulatory scheme in furtherance of its interests protected under the Twenty-first Amendment. As this inquiry may ultimately depend upon factual findings and conclusions, we remand this case to the district court to conduct the balancing of state and federal interests. See Miller v. Hedlund, 813 F.2d 1344, 1352 (9th Cir. 1987) ("Since we have rejected the ground upon which the lower court's decision rested and since the Twenty-first Amendment issue may ultimately rest upon findings and conclusions having a large factual component, we remand this issue for the trial court's initial determination.").

The district court's order granting summary judgment for New Mexico is REVERSED and the case is REMANDED for the district court to conduct a balancing of state and federal interests. In further response to the parties' joint motion to withdraw their motions to seal their briefs, which we have granted, Volume III of the Appellant's Appendix will remain sealed.